Keating, J.
The defendant, Domingo Gonzalez, Avas the father of an illegitimate child, who had been surrendered by her mother to the Welfare Department. Gonzalez attempted to obtain custody of his daughter, but the Welfare Department was opposed to this. On the trial of Gonzalez for assault in the second degree, it was testified that he Avent to the office of the Welfare Department and, pointing a gun at a patrolman in the office, told him to put up his hands and demanded to be taken to the Commissioner. He stated at this time that he Avanted his child.
On arraignment in the Criminal Court the day after the crime, Gonzalez was committed for psychiatric examination. The psychiatric report to the court noted that, although he had a “relatively intact facade”, defendant showed a “serious impairment in his thinking * * * characterized by many paranoid trends ”, The report concluded that “ Hospitalization is strongly recommended ”.
On the basis of this report, defendant Avas admitted to MattcaAvan State Hospital where he remained for some 10 months, after Avhich he was released and the criminal prosecution A\as resumed. At the trial, defendant insisted on trying his OAvn case and refused the services of assigned counsel, although counsel was present and, to the extent permitted, helped him. No plea of insanity was interposed, and, in fact, defendant on the trial insisted that he Avas quite sane.
Before the trial began, the Trial Judge directed another psychiatric examination to determine defendant’s mental ability *292 to be tried. The report of the psychiatrists was guarded. They concluded that defendant “ is not psychotic in the legal sense ” and, therefore, they felt “he is able to stand trial and defend himself adequately at the present time ”.
Again, the curious and very guarded phrase is used: ‘ ‘ Thus, in the legal sense, we would not consider him insane.” There follows some significant comment: “ From a purely psychiatric point of view, however, we would consider him an individual whose personality has become sufficiently altered and aberrant to warrant a diagnosis of psychiatric abnormality which is probably best described as a Paranoid State. We would consider this to be only in partial remission at this time.”
This would seem, on the face of it, to suggest that defendant was then insane in a psychiatric sense but not a “ purely ” legal sense. This is strikingly similar to the diagnosis of 10 months before when he was mentally ill enough to be committed to Matteawan, i.e., he “ presents serious impairment in his thinking ’ \
The Judge accepted the written report of the psychiatrists without conducting a hearing on the question of defendant’s mental capacity to be tried. The opening of defendant to the jury repeated almost verbatim some of the statements which defendant had made to psychiatrists which had suggested psychiatric abnormality, particularly his obsessive sense of injustice in not obtaining custody of his child.
After the verdict of guilty and before sentence, the Judge directed a further psychiatric examination to determine the defendant’s ability to understand the proceedings against him. The psychiatric report resulting from this third examination was rather similar to the others. There is still a persistent preoccupation “with gaining the custody of his daughter”. Improvement in his mental condition is indicated, but if he is released to the community “it is likely that he will require assistance and supervision”. The diagnosis (“Impression”) is ‘ ‘ Without psychosis; schizophrenic reaction; Paranoid Type, in remission He “ is not in such a state of idiocy ”, etc., as to “ be incapable of understanding the charge ”, etc.
This appeal presents two questions for our consideration. The first is whether the Trial Judge sua sponte should have conducted a hearing as to the defendant’s mental capacity at the *293 time of the trial. Second, irrespective of the question of the defendant’s sanity at that time, whether the Trial Judge should have charged the jury on the question of the defendant’s sanity at the time of the commission of the crime.
The written psychiatric report of the defendant’s condition as the trial began and the statements and attitudes of the defendant in undertaking the trial alone should have impelled the trial court sua sponte to order a hearing on the issue of the defendant’s competence to stand trial. (Pate v. Robinson, 383 U. S. 375, 378.) Clearly, the defendant is now entitled to a hearing on that issue. We conclude, however, that a complete new trial of the issue of guilt or innocence is not mandated. We consider below the two stages of defendant’s alleged insanity.
I. Sanity at the Time of Trial
In People v. Hudson (19 N Y 2d 137) we interpreted the rule laid down by Pate v. Robinson (supra). In Pate the Supreme Court held that a new trial was mandated since “ expert witnesses would have to testify solely from information contained in the printed record. That Robinson’s hearing would be held six years after the fact aggravates these difficulties.” (Pate v. Robinson, supra, p. 387.) The court in Pate found that it would be virtually impossible to determine Robinson’s sanity at the time of trial solely from the printed record. We distinguished Hudson from Pate in this respect on the ground that there was available in Hudson ‘ ‘ medical proof related to conditions at the initiation and during the progress of the trial, and of the close observations of witnesses who, from different points of vantage, observed defendant and could describe his conduct, [which] makes it possible to afford a plenary inquiry into his competency at the time of trial. The issue would not here be left, as it was in Pate, to opinions based on reading a printed record. All the safeguards of a concurrent determination Avould thus be preserved.” (People v. Hudson, supra, p. 140.)
The instant case is similar to People v. Hudson in this respect. The trial was conducted in 1964. Presumably, as in Hudson, much more than merely the printed record Avill be available since not only the Avitnesses from the previous trial can testify regarding Gonzalez ’ demeanor and conduct but, also, the doctors *294 who examined, him and the Judge can be called upon to testify concerning their observations of Gonzalez.
Accordingly, under People v. Hudson (supra) a hearing should be held with respect to Gonzalez’ sanity at the time of his trial.
II. Sanity at the Time of the Commission of the Crime
Obviously, if it is determined, after the hearing, that Gonzalez was not competent at the time of his trial, he will be entitled to a new trial. It has been suggested, however, that, even if it is concluded that he was sane at the time of his trial, nevertheless the verdict should not stand, because the Trial Judge failed to charge the jury, sua sponte, on the issue of insanity at the time of the commission of the crime. It is significant with respect to this issue that Gonzalez insisted on conducting his own defense. A lawyer was present to aid him to the extent that he permitted this. Gonzalez did not raise the defense of insanity during the trial and, in fact, insisted throughout that he was sane. It seems to us improper to place on a Trial Judge the burden of interposing and charging possible defenses, although not raised on the trial, simply because the defendant has insisted on appearing pro se. If Gonzalez had been represented by an attorney who failed to raise the defense of insanity, it would be simply assumed that he had consulted with his client, who was unprepared to risk being confined to a State mental institution. Where a sane person similarly refuses to raise such a defense on his own behalf, it should ordinarily be assumed that he waived it. We do note, however, that Gonzalez mentioned after the verdict and before sentencing that 1 ‘ it is illegal to try an ex-mental patient for a crime committed while he was supposed to be mentally ill.”
Since the defendant failed to raise this line of defense throughout the trial, this reference to possible insanity at the time of the commission of the crime should not operate to vitiate a verdict rendered on the basis of the defendant’s waiver of this defense. If we were to permit such a statement as quoted above to invalidate a duly rendered verdict simply because the defendant appeared pro se, an unfair discrimination would exist against those defendants who are represented by attorneys. No one would suggest that an attorney, who failed to raise such *295 a defense on behalf of his client, could obtain a new trial after the verdict by such a casual reference.
We are not unmindful of the difficulties presented by defendants who insist on conducting their own defenses. Every effort should be made by both the Judge and the People to ascertain that such a defendant understands the possible avenues of defense which are open to him.
In this case, the Judge saw to it that an attorney was present to aid in Gonzalez’ defense. If the trial court had charged insanity over the defendant’s objection, this might have seriously jeopardized his case. The penalty for assault in the second degree is not so serious as to ordinarily risk incarceration in a State mental institution to avoid it.
Under the circumstances of this case, therefore, it was not improper for the Trial Judge to fail to charge the defense of insanity. Since it "was error, however, for him not to hold a hearing to determine the defendant’s sanity at the time of the trial, a hearing should be ordered on that issue and, if the defendant’s allegations are substantiated, a new trial ordered. If they are not, the judgment should be affirmed.