UNITED STATES of America ex rel. Frank LAUDATI, Petitioner,

v.

Hon. Vito TERNULLO, Superintendent, Fishkill Correctional Facility, Beacon, New York, Respondent.

No. 75 Civ. 3807.

United States District Court, S. D. New York.

Nov. 30, 1976.

---

Frank Laudati, pro se.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, by Rhonda Amkraut Bayer, Deputy Asst. Atty. Gen., New York City, for respondent.

## OPINION

ROBERT L. CARTER, District Judge.

Petitioner Laudati is currently serving concurrent sentences of 20 years to life imprisonment for the murder of his wife and son. The bodies of Laudati's wife and child were found on April 1, 1968. On the afternoon of March 30, Laudati had tried to hold a press conference regarding the "Communist-Mafia conspiracy" at the FBI building in New York City. A police officer took him to a psychiatrist at Lenox Hill Hospital, from which he was sent to Bellevue and then to Kings County Hospital for mental observation. He was sedated and placed in a straight jacket.

On April 1, 1968, while still confined at Kings County Hospital, Laudati told a nurse that he had killed his wife and child with a hatchet. He repeated his confession, after receiving Miranda warnings, to police officers who came to the hospital, and to a district attorney at the stationhouse. After arraignment on April 2, Laudati was returned to Kings County Hospital for further observation.

On April 12 and 15, 1968, four psychiatrists found Laudati to be a paranoid schizophrenic and unable to consult with counsel or understand the nature of the charges against him.[1] He was indicted on July 29,

---

1. Dr. Arnold Winston examined Laudati on April 12, 1968, and a panel of three psychiatrists—Drs. Anthony Jiminez, Walter Bromberg, and Richard Weidenbacker—examined him on April 15. All had determined that Laudati suffered from paranoid schizophrenia and recommended commitment (Tr. 249). Dr. Daniel Schwartz examined Laudati on August 19, 1968, and found him competent to stand trial. His report stated that Laudati was psychotic after the crime, but had recovered from this "transient episode" (Tr. 283, 285).

Dr. Jiminez subsequently testified that he was inclined to believe that Laudati was malingering a psychotic condition on April 15, 1968

(Tr. 450–452). Dr. David Abrahamsen, a forensic psychiatrist, also testified that while he never directly examined Laudati, after reviewing evidence not considered by the doctors originally examining Laudati (his high I.Q. scores Tr. 374, which the doctor examined, Tr. 533; Laudati's previous examination by Dr. Julian David, clinical psychiatrist with the N.Y. Family Court, who found him not psychotic, Tr. 367–74; 537–38; and other events surrounding the crime and statements made by defendant), he concluded that Laudati was not suffering from a psychosis at any time between March 30 and August 19, 1968. (Tr. 540, 549).

1968, for murder. The court ordered further mental observation at Kings County Hospital, and on August 19, 1968, psychiatrists found defendant competent to stand trial. This report was confirmed without a hearing on September 30, 1968, when Laudati was arraigned on the murder charges and pleaded not guilty. At that time and at all subsequent times, he refused, against advice of counsel, to plead not guilty by reason of insanity.

A *Huntley* hearing was begun, after many delays occasioned primarily by defense counsel, on January 27, 1970, to determine the voluntariness of Laudati's confessions. After a lengthy hearing, it was determined that Laudati was not insane when he made the three confessions, and that he had knowingly waived his constitutional rights.

A jury trial was commenced on June 29, 1970. The defense introduced no psychiatric testimony and the prosecution was precluded from doing so; but the jury was informed of defendant's aberrant behavior at the FBI building on March 30, 1968, and of his subsequent sojourn in the psychiatric ward of Kings County Hospital. The court's charge, however, made no reference to defendant's mental state at either the time of the crime or the time of the confessions, and contained no instructions in regard to the related evidence or issues.

The jury found Laudati guilty as charged, whereupon he was sentenced to concurrent terms of from 20 years to life. Approximately five months after sentencing, Laudati was found to be mentally ill and was transferred from Attica Correctional Facility to Dannemora State Mental Hospital. After judicial review of his case on June 3, 1971, and on April 6, 1972, an Order of Retention had been entered, to expire on April 6, 1974. Laudati is currently being held at the Fishkill Correctional Facility in Beacon, New York.

Laudati's petition for habeas corpus relief raises the following points: (1) New York State failed to accord petitioner due process when it did not hold a hearing to determine Laudati's competence to stand trial; (2) introduction at trial of his alleged confessions violated his constitutional rights; (3) it was error to deny him compulsory process for the attendance of an expert psychiatric witness at the *Huntley* hearing; (4) petitioner was denied a fair trial by the trial court's failure to marshal evidence *sua sponte* concerning his sanity at the time of the alleged crime and at the time of his confessions.

Petitioner has appealed his conviction to the Appellate Division of the New York State Supreme Court and to the New York Court of Appeals. The conviction was affirmed. It would seem, therefore, that all state post-conviction remedies have been exhausted.

## 1. Competence to Stand Trial

The conviction of an accused person while legally incompetent violates due process, *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), and "state procedures must be adequate to protect this right", *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). Where there is evidence to suggest that a defendant is incompetent to stand trial, a state court's failure to accord him a hearing on this issue deprives the defendant of his constitutional right to a fair trial. *Id.*, at 385, 86 S.Ct. 836. Defendant's failure to request a competency hearing does not constitute a waiver of the defense of incompetence to stand trial. *Id.*, at 384, 86 S.Ct. 836.

In light of the Supreme Court's mandate, it is necessary to determine whether, at the start of the trial, sufficient evidence existed to have required the trial court to order a hearing on petitioner's competency to stand trial. At the outset, therefore, it is crucial to distinguish the three occasions when petitioner's mental state was at issue: (1) his mental state at the time the crime was committed; (2) his mental state at the time of making the three confessions; (3) his mental state at the time of his actual trial. It is only to the last occasion that an inquiry into defendant's competency must be addressed.

The Supreme Court directs that such an inquiry requires determining

"whether [the defendant had] sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he [had] a rational as well as factual understanding of the proceedings against him."

*Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). In habeas corpus proceedings, however, federal courts

"should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial."

*Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir. 1973). I do not think petitioner has met this burden.

▮ Facts which would tend to support a claim of mental incompetence would be: "a history of mental illness [and] substantial evidence of mental incompetence at or near the time of trial supported by the opinions of qualified physicians and the testimony of laymen." *Bruce v. Estelle, supra,* 483 F.2d at 1043. The record reveals that petitioner did not have a history of mental illness prior to the crime. Dr. Julian David, clinical psychiatrist with the N.Y. Family Court, testified that when he examined Laudati in March, 1968, he found signs of a paranoid personality disorder, but no evidence that he was psychotic or in need of hospitalization. (Tr. 369). Further, while defendant initially was found to be incompetent to stand trial in April, 1968, there was evidence to suggest that he malingered a psychotic condition.[2] Moreover, Laudati was subsequently found competent to stand trial in August, 1968, and nothing in Laudati's behavior from that time until his trial in 1970 indicated that this conclusion should be reexamined. *Cf. United States ex rel. Roth v. Zelker,* 455 F.2d 1105, 1108 (2d Cir.), *cert. denied,* 408 U.S. 927, 92 S.Ct. 2512, 33 L.Ed.2d 340 (1972).

It is true that Justice Kern, while in Criminal Term—Part 4, in September, 1969, suggested that because a year had elapsed since the defendant had been found competent to stand trial, it might be wise for the defendant to undergo another examination to establish his competency at that time (A. 9–14). But defense counsel strenuously objected. Counsel argued:

"the defendant neither by his actions or any other defense asserted has indicated any behavior which would warrant this court sending him for psychiatric examination.

\* \* \* \* \* \*

"We have stated we are ready for trial. We have raised no allegations concerning his inability to confer with us. Neither has the defendant raised such an allegation. The most recent psychiatric report has indicated that he is ready, willing and able to stand trial.

A. 11–12; *see also* Tr. 222.

The prosecution's motion for pre-trial psychiatric examination of defendant was subsequently denied. (Tr. 10; 223).

The Second Circuit has held that

"the opinion of a defendant's attorney as to his ability to understand the nature of the proceedings and to cooperate in the preparation of his defense, is indeed significant and probative."

*United States ex rel. Roth v. Zelker, supra,* 455 F.2d at 1108. *Cf. Pate v. Robinson, supra,* 383 U.S. at 384, 86 S.Ct. 836.

When defendant's attorney, Mr. Sonenshine, attempted to withdraw from the case just prior to trial (A. 21–31), he gave as a reason a disagreement with defendant as to an appropriate defense strategy. At no time did he suggest that their inability to agree was due to defendant's inability to confer with him or understand the nature of the charges against him.

Numerous psychiatrists and psychologists, including Dr. David Abrahamsen, had opportunities to observe the defendant during the *Huntley* hearing. None suggested that petitioner might at that time be incom-

---

**2.** See footnote 1, *supra.*

petent to stand trial. Finally, Judge Cullen, who presided at both the *Huntley* hearing and the trial, had ample opportunity to observe the defendant during these times and found no reason to have the defendant examined or order a sanity hearing.

This Circuit has held that *Pate* does not require that "a trial court . . . always hold a sanity hearing, on its own motion, no matter what the evidence is and regardless of whether or not a defendant requests one." *United States ex rel. Evans v. LaVallee*, 446 F.2d 782, 786 (2d Cir.), *cert. denied*, 404 U.S. 1020, 92 S.Ct. 691, 30 L.Ed.2d 668 (1971). The facts here did not require a hearing.

### 2. Admissibility of Confessions

Petitioner next challenges as error the trial court's admission of his confessions into evidence. He claims that because he was mentally incapacitated at the time he made these alleged confessions, they were inadmissible both because they were involuntary, and because they were made while he was incapable of knowingly and intelligently waiving his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A criminal defendant who challenges the voluntariness of a confession made to officials[3] and sought to be used against him at his trial has a due process right to a reliable determination that the confession was in fact voluntarily given. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

The Supreme Court has ruled that the prosecution must establish voluntariness by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). New York State holds the prosecution to an even higher standard. Here, the trial court found after a full and fair hearing, that Laudati

was not insane when he made the statements and that the prosecution

"established *beyond a reasonable doubt* that the defendant knowingly and intelligently and without any coercion whatsoever waived his constitutional rights, and freely and voluntarily made the statements sought to be excluded." (A. 20) (emphasis added)

Having examined the record of the pre-trial *Huntley* hearing, I find that the state court made an "adequate" determination of the issue of the voluntariness of defendant's confessions. *LaVallee v. Delle Rose*, 410 U.S. 690, 691–92, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). Under 28 U.S.C. § 2254(d), this determination is presumed to be correct, and petitioner bears the burden of establishing by "convincing evidence that the state court's determination was erroneous." *Id.* at 695, 93 S.Ct. at 1206. This burden has not been met. Indeed, after examining the record, I am in full accord with the state court determination.

### 3. Compulsory Process for Attendance of Witnesses

Petitioner claims that the denial of compulsory process for the attendance of an expert psychiatric witness, Dr. Bromberg, at the pre-trial *Huntley* hearing violated his Sixth Amendment rights. The government contends that because this claim, when made on appeal in state courts, was based on due process and equal protection grounds, it betrays a failure to exhaust state remedies, *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), and should be dismissed.

Pro se habeas petitions should be construed with a measure of tolerance, *Gibbs v. Burke*, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686 (1949). Petitioner essentially is claiming that his Sixth Amendment rights have been violated, thereby denying him due process. Mindful of the strict standards set out in *Picard*, I find this claim

---

**3.** Respondent presses the following argument. The first of defendant's statements was made, unsolicited, to a nurse (Tr. 758–59) who was not subject to *Miranda* restrictions and alone

would support the verdict. Because I find that the petitioner has not demonstrated that the state court's determination that all his confes-

sufficiently analogous[4] to that made in the state court not to warrant dismissal on exhaustion grounds. The argument was that due process and equal protection required that even indigent defendants be afforded Sixth Amendment safeguards. Petitioner here merely drops the equal protection claim.

 The right of an accused "to have witnesses produced at government expense is not absolute; the decision on the number to subpoena is within the sound discretion of the trial court." *United States v. Linn*, 460 F.2d 1274, 1276 (10th Cir. 1972). I cannot find an abuse of that discretion by the trial court here. *Ibid*. It had before it the report and opinion by Dr. Bromberg. It heard testimony by other of defendant's witnesses, among them psychiatrists; Dr. Bromberg's testimony would only have been cumulative to theirs (Tr. 651). *See United States v. Rosa*, 493 F.2d 1191, 1194 (2d Cir. 1974); *United States v. Fromme*, 405 F.Supp. 578, 581 (E.D.Cal. 1975).

### 4. Duty to Marshal the Evidence on Defendant's Mental Capacity

Petitioner's final claim is that the trial court's failure to marshal the evidence, *sua sponte*, concerning petitioner's lack of mental competency both at the time of the crimes and at the time of the confessions denied him a fair trial. In other words, the petitioner argues: (1) that despite the fact that "[t]here was no defense of 'insanity', per se" (p. 9), failure to marshal the evidence with respect to petitioner's mental capacity at the time of the crimes denied him due process and equal protection (pp. 8–9), and deprived him of a fair trial under *Pate v. Robinson, supra;* (2) failure to

charge the jury on the issue of mental capacity as bearing on the voluntariness of his confessions also contravened *Pate* (p. 10).

 Respondent again urges that this claim should be dismissed for failure to exhaust state remedies, *Picard v. Connor, supra*. With respect to the second argument, respondent's assertion may have some merit. This argument was advanced on the state level, but was grounded in errors of state law. (Defendant-Appellant Brief to New York Court· of Appeals, pp. 63–69). It was not there alleged that these were errors of a constitutional nature. Because the state tribunals have not had an opportunity to consider this question, *Picard* requires its dismissal.

The first argument, however, when made in state court, did raise at least one of the same constitutional questions asserted here. It was argued there that failure to charge, *sua sponte*, with respect to petitioner's possible insanity at the time of the crimes violated the precepts of *Pate v. Robinson, supra*. (Defendant-Appellant Brief to New York Court of Appeals, p. 69).

 *Pate v. Robinson* directs that where the evidence suggests that the defendant is presently incompetent to stand trial, the trial court is required, *sua sponte*, to conduct a hearing on the issue in order to insure his right to a fair trial. It does not, however, suggest that the trial court is under a similar obligation to marshal the evidence, *sua sponte*, with regard to a defendant's mental capacity where that defendant has not elected to assert an insanity defense.

 In the federal courts, the decision to marshal the evidence as to a defend-

---

sions were voluntarily given was incorrect, I need not address this issue.

4. The following argument was made by petitioner to the N.Y. Court of Appeals:

"In *Gideon v. Wainwright*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963) the Supreme Court held that the right to counsel is guaranteed by and made applicable to the states by the Due Process and Equal Protection Clauses of the United States Constitution because of

the great importance to the defense of having legal representation.

The right to produce witnesses at a hearing is fundamental to due process. This was squarely recognized in *Dillon v. U. S.*, 230 F.Supp. 487, 493 (D.C.Or.1964), which declared '* * The production of witnesses for an indigent defendant is a phase of due process * * *'.

The appellant's conviction should be reversed on this ground alone."

ant's insanity is within the trial court's discretion. *See Whalem v. United States*, 120 U.S.App.D.C. 331, 346 F.2d 812, 818–19 and n. 10, *cert. denied*, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965); *Trest v. United States*, 122 U.S.App.D.C. 11, 350 F.2d 794, 795, *cert. denied*, 382 U.S. 1018, 86 S.Ct. 634, 15 L.Ed.2d 532 (1965); *Cross v. United States*, 122 U.S.App.D.C. 380, 354 F.2d 512, 513 (1965); *United States v. Robertson*, 165 U.S.App.D.C. 325, 507 F.2d 1148, 1157–58 (1974). Moreover, rules with regard to insanity defenses are matters of state law; therefore, they do not raise issues of constitutional magnitude. *United States ex rel. Bornholdt v. Ternullo*, 402 F.Supp. 374, 378 (S.D.N.Y.1975). Consequently, the trial court's failure to marshal the evidence raises no issue that can be the basis of a habeas corpus petition in federal courts. *Ibid. See also Schaefer v. Leone*, 443 F.2d 182 (2d Cir. 1971), *cert. denied*, 404 U.S. 939, 92 S.Ct. 277, 30 L.Ed.2d 251 (1972).

In New York, a defendant is presumed sane and has the burden of going forward with evidence of insanity. *See People v. Silver*, 33 N.Y.2d 475, 354 N.Y. S.2d 915, 920–21, 310 N.E.2d 520, 523–524 (1974). The petitioner here repeatedly insisted that he did not wish to raise the issue of insanity at his trial (A. 11–12; Tr. 222) and even refused to be examined by psychiatrists when examination was proposed by the prosecution (*Ibid.*). Where a competent, adequately represented defendant chooses not to assert a defense of insanity, the New York Court of Appeals has held that it is not improper for the trial judge to fail to charge the defense of insanity. *People v. Gonzalez*, 20 N.Y.2d 289, 282 N.Y.S.2d 538, 229 N.E.2d 220 (1967).

For the reasons hereinabove asserted, the petition is denied.

SO ORDERED.