Jasen, J.
(dissenting). While I agree that the defendant’s bizarre behavior at a pretrial hearing as well as at the trial raises a serious doubt as to his competency to stand trial and should have warranted further examination (CPL 730.30, subd 1), I am unable to accept the conclusion that the appropriate remedy is the summary reversal of the conviction.
The pertinent facts may be briefly recited. Prior to the commencement of the criminal proceedings, defendant discharged both his Legal Aid attorney as well as counsel assigned to represent him and elected to proceed pro se. However, at the direction of the court, the second attorney continued to serve the defendant in an advisory capacity. At a pretrial identification hearing, defendant wore a pillow case over his head, engaged in disruptive behavior which resulted in his being shackled and made statements to the court that indicated both paranoia and confusion. On the other hand, *1016 defendant personally engaged in an effective cross-examination of prosecution witnesses. At the trial, defendant persisted in creating disturbances. When shackling failed to restrain the defendant from making noises and jumping up and down in his seat, he was removed from the courtroom. Defendant sat in the robing room, adjoining the courtrooms, for the remainder of the trial and did not examine witnesses, did not make a summation and did not except to the court’s charge. The assigned counsel reported difficulty in communicating with his client.
The trial court denied motions for psychiatric examination into competency on the ground that the defendant was feigning incompetency in order to frustrate the proceedings. At some point after conviction, it was discovered that defendant had been examined and treated for psychiatric difficulties while in custody during the pendency of the trial and after his conviction. While the records of the prison physicians indicate that defendant was hallucinating, acting in a bizarre manner, and suffering from an "acute psychosis”, the reports also raise the possibility that defendant was feigning these symptoms in order to obtain better treatment. Indeed, defendant made use of the prison law library and co-operated with appellate counsel. The prison records, for some undisclosed reason, were not presented to the trial court.
Defendant’s behavior, coupled with the subsequently discovered psychiatric reports, warrants further examination into his competency. In my view, the record suffices to create doubts as to competency, but certainly does not establish incompetency as a matter of law. The essential question, then, is whether a hearing into defendant’s capacity at the time of the trial would be effective to resolve the doubts one way or the other. I do not believe that the time elapsed since the trial is so extensive as to warrant the presumption, as a matter of law, that a hearing would not be productive.
A hearing is not sufficient where the expert witnesses would have to testify solely from previously recorded information (Pate v Robinson, 383 US 375, 387) or where, at the time of the trial, defendant was not extensively examined by medical experts and neither counsel nor the court had substantial opportunities to observe the defendant (Drope v Missouri, 420 US 162). However, a hearing will adequately protect the defendant’s rights if there exists sufficient contemporaneous evidence bearing on competency from which a determination *1017 can be made. Appropriate evidence would include the testimony of examining psychiatrists and other medical experts, of trial counsel for the defendant, as well as of the Trial Judge and other persons who came into contact with the defendant at the time of the trial. (People v Hudson, 19 NY2d 137, 140, cert den 398 US 944.) Although the hearing ordered in Hudson would take place well over three years from the time of trial, we held that the hearing would be the appropriate means to resolve the competency issue. "The availability of medical proof related to conditions at the initiation and during the progress of the trial, and of the close observations of witnesses who, from different points of vantage, observed the defendant and could describe his conduct, makes it possible to afford a plenary inquiry into his competency at the time of trial. The issue would not here be left, as it was in Pate, to opinions based on reading a printed record. All the safeguards of a concurrent determination would thus be preserved.” (19 NY2d, at p 140.)
Where contemporaneous medical evidence exists which bears on the competency issue and would supplement the personal observations, both past and present, of medical experts and others, the courts have not hesitated to order that a hearing be held, despite the lapse of significant periods of time. (See, e.g., People v Armlin, 37 NY2d 167 [over two years]; People v Gonzalez, 20 NY2d 289, 293-294 [three years], cert den 390 US 971; People v Hudson, 19 NY2d 137, supra [three years].)
In this case, only two years have elapsed since the time of trial, a period significantly shorter than in other cases in which hearings have been directed. The prison physicians who examined the defendant, defense counsel, the Trial Judge, and others that came into contact with the defendant at the time of trial would be available to testify. Since there is sufficient evidence from which a valid retrospective determination could be made, a hearing would be sufficient to preserve both the rights of the defendant and the rights of the prosecution. The evidence on this record does not warrant a summary reversal of the conviction and the vacatur ordered by the majority, when defendant may well have been feigning mental illness, is unjust and at variance with our prior precedents.
Accordingly, I would remit the case to the trial court, but to another Judge, for a determination of defendant’s mental capacity at the time of the trial.
*1018 Chief Judge Breitel and Judges Jones, Wachtler and Fuchsberg concur in memorandum; Judge Jasen dissents in part and votes to modify in a separate opinion in which Judges Gabrielli and Cooke concur.
Order reversed, etc.