Hancock, Jr.,
J. (dissenting). A defendant who lacks the capacity to understand the proceedings against him, to consult with counsel, or to assist in his own defense, may not be subjected to a trial. This prohibition is a basic rule of constitutional due process. If there is a reasonable ground to doubt that the defendant is competent to stand trial, the court must, sua sponte, order and conduct an evidentiary hearing to resolve that doubt. This mandate also is required by basic due process.
Here, the court accepted defendant’s guilty plea without holding a competency hearing, and defendant was convicted and sentenced despite overwhelming evidence that he was mentally disabled, including (1) the reports of three psychia *248 triste, one private and two court-appointed, that defendant was not competent to stand trial; (2) defendant’s long history of severe mental instability; (3) defendant’s intermittent commitment in psychiatric institutions during the six years prior to his arraignment; (4) defendant’s bizarre and highly irrational behavior at the time of the charged crimes; (5) the trial court’s own commitment of defendant to a psychiatric institution approximately one month prior to his guilty plea; (6) the strenuous arguments of defendant’s counsel that her client was incompetent and, following defendant’s threat to discharge counsel for raising the competency issue, her exhortations that the court direct an evidentiary hearing on its own motion; (7) the determination of the Social Security Administration that defendant was entitled to continued mental disability benefits based upon its own detailed psychiatric evaluation; and (8) the trial court’s and the defendant’s own recognition, at the time of sentencing, that defendant needed psychiatric treatment and the court’s own recommendation that he be committed to a state institution where he would receive such treatment.
In reaching the conclusion that defendant was competent to stand trial, the court had before it only one contrary report prepared at the Mid-Hudson Psychiatric Center a mere six days after defendant was committed there on the trial court’s own order. Without the benefit of any hospital records or summaries from defendant’s previous commitments, the Center’s psychiatric staff reached a "consensus” on defendant’s fitness to proceed, explicitly relying on defendant’s own assurances that he never suffered hallucinations and that he responded well to drug treatment.
There can be no doubt about the governing rule of law. Whenever, as here, the trial court has information which, objectively considered, creates a reasonable ground to doubt that the defendant is competent to stand trial, there must be an evidentiary hearing, as a matter of due process, to resolve that issue. This is not a matter for the court’s discretion; it is a constitutional requirement born of the need to protect a defendant’s right to a fair trial (Pate v Robinson, 383 US 375, 385; People v Gonzalez, 20 NY2d 289, 293).
Nor can there be any doubt that the courts below did not apply this rule and failed to address the necessary constitutional question: whether there was reasonable ground to doubt defendant’s competence to stand trial such that a hearing was *249 mandated. The courts simply bypassed that question and addressed, instead, the ultimate one of whether defendant was, in fact, competent. Thus, the trial court, without holding a hearing at which evidence could be offered and questioned by the parties, proceeded to make the very determination for which such a hearing was constitutionally required, stating: "the court after talking with the Defendant and after having examined the report from Mid-Hudson, is of the opinion that the Defendant does understand the nature of the charges and is competent to assist in his defense and the Court at this time accepts the report” (emphasis added).
The Appellate Division, in affirming, concluded that the trial court had not abused its discretion in proceeding without a hearing and that it "was justified in its belief that defendant was competent at the time of the plea” (emphasis added). Like the trial court, the Appellate Division failed to recognize that the constitutional mandate for an evidentiary hearing is not a matter of discretion and that it is triggered, not when the court believes the defendant to be incompetent, but whenever there is reasonable ground to doubt his competency.
In affirming the order of the Appellate Division and holding that a competency hearing was not required in these circumstances, the majority of our court apparently relies on two separate and seemingly incompatible rationales. Neither withstands scrutiny. First, the majority argues that the trial court’s "undisturbed” "factual and constitutionally satisfactory determination that the defendant was competent to proceed” was "supported in the record”. But the issue, of course, is not whether there was an evidentiary basis for the trial court’s factual conclusion that defendant was competent. The sole issue is whether a hearing was required because there was reasonable basis to doubt the defendant’s competency. Second, the majority, apparently conceding that doubt as to competence and not competence itself is the critical legal question in the case, nevertheless concludes that all the information before the trial court "wholly fail[ed] to establish that a 'sufficient doubt’ existed which would, independently of the applicable statutes, require the trial court to sua sponte order a hearing on constitutional due process grounds”. (Majority opn, at 245.) Inasmuch as neither lower court addressed that issue, the majority necessarily reaches its factual conclusion as a matter of law. The evidence in the record clearly compels the opposite result.
*250 In my view, the trial court’s refusal to order a competency hearing violated due process under both the Federal and New York Constitutions. The majority’s approval of that failure, on either ground it advances, cannot be reconciled with settled principles and, therefore, I respectfully dissent.
I
The prohibition against subjecting an incompetent person to a criminal prosecution is so fundamental that a trial court has a constitutional duty to order an evidentiary hearing, sua sponte if need be, to resolve any reasonable ground for doubting that the defendant is mentally fit to proceed. Contrary to the assertions and implication in the majority opinion, such a hearing can neither be waived by the defendant, obviated by the trial court’s prehearing opinion as to the defendant’s competence, nor dispensed with in the exercise of discretion. This is settled law, both Federal[1] and State.[2]
*251 As the decisions of the Federal courts and our own court make clear, the trial court is not free to avoid a competency hearing by simply choosing between psychiatric reports or other conflicting indicia of defendant’s mental condition to reach a conclusion that, on balance, defendant appears to be competent. Where there is substantial evidence that the defendant is incompetent, or where the evidence is conflicting, there must be a hearing, at which the evidence can be more fully presented and challenged, before such a determination can properly be made. For this reason, the majority’s reliance on the trial court’s "undisturbed findings” that defendant was competent and on defendant’s failure to "affirmatively request a hearing” is misplaced. The major Federal and State precedents are in agreement that the determination must await a hearing whenever the defendant’s competency is reasonably in question.
In Pate v Robinson (supra), the Supreme Court held that the defendant’s right to a fair trial was violated by the trial court’s failure, sua sponte, to conduct a hearing where the evidence, provided by four laypersons, "revealed that [defendant] had a long history of disturbed behavior” (383 US, at 378, supra). Because "the conviction of an accused person while he is legally incompetent violates due process” (id., citing Bishop v United States, 350 US 961), a defendant is entitled to a hearing on the issue, the court said, whenever "sufficient doubt exists as to his present competence” (id., at 385, 387 [emphasis added]). Moreover, the court rejected the argument that the defendant "deliberately waived” the defense of competency to stand trial by failing to demand a hearing as the state statute required. "[I]t is contradictory to argue that a defendant may be incompetent”, the court explained, "and yet knowingly or intelligently 'waive’ his right to” a competency hearing (id., at 384). Finally, the court made plain that the "mental alertness and understanding displayed” by the defendant in his colloquies with the trial judge, even when considered with the stipulated opinion of a state expert that defendant was sane, constituted "no justification” for overlooking defendant’s history of irrational behavior and dispensing with a competency hearing (id., at 385-386 [emphasis added]).
*252 In Drope v Missouri (420 US 162), the Supreme Court, while acknowledging that the indicia of defendant’s mental instability did not approximate that in Robinson, nevertheless held that the trial court failed to give "proper weight” to the information "suggesting incompetence” which came to light during the trial (id., at 179). The defendant’s "strange behavior”, including the attempted strangulation of his wife and an attempted suicide, "created a sufficient doubt” of the defendant’s competence to stand trial to trigger the constitutional requirement for further inquiry (id., at 180).
Noting that the prohibition against trying a defendant who lacks the capacity either to understand the proceedings, to consult with counsel, or to assist in his own defense is "fundamental to an adversary system of justice” (id., at 172), the court emphasized that trial judges must be alert to indications that a defendant may be unfit to proceed. "[EJvidence of a defendant’s irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant”, the court explained, and "even one of these factors standing alone may, in some circumstances, be sufficient” (id., at 180). Finally, although counsel in Drope "did not clearly suggest” that the defendant’s competence to stand trial was in question and, therefore, failed to give "appropriate assistance to the trial court in that regard”, the evidence was sufficient to "cause the trial court to doubt [defendant’s] competence” and, consequently, to order an inquiry (id., at 176-178).
The Supreme Court did not, in Robinson or Drope, adopt a specific standard for the nature or quantum of evidence necessary to mandate a competency procedure (see, Chenault v Stynchombe, 546 F2d 1191, 1192). The Federal Courts of Appeals, however, while employing somewhat varied terminology, have consistently required only that the information before the trial court reasonably create a doubt about the defendant’s present mental capacity (see, LaFave and Scott, Substantive Criminal Law § 4.4, at 472; see also, Federal citations, supra, at n 1). The basic test applied by all these courts was well stated in general terms by the Fifth Circuit in Lokos v Capps (625 F2d 1258, 1261): "The question is: Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant’s competency and alerted him to the possibility that defendant could neither understand the proceedings nor appreciate their significance, nor rationally aid his attorney in his defense?” *253 The test articulated by our court, more than 30 years ago, is to similar effect.
In People v Smyth (3 NY2d 184), decided several years prior to the Supreme Court’s decision in Robinson, we stated the rule which has since been consistently applied to determine when a competency hearing is required. "[I]t is the duty of the court” to conduct an inquiry, we explained, "[i]f at any time before final judgment in a criminal action it shall appear to the court that there is reasonable ground for believing that a defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense” (id., at 187 [emphasis added]). Moreover, although we held that there was no entitlement to a competency hearing in the absence of any evidence that the defendant was insane at the time of his guilty plea or sentence, we noted that, where there was such evidence, the defendant would "not be barred [on appeal] by not having raised the issue” previously (id.).
In People v Gonzalez (20 NY2d 289, supra), we held that there was reasonable ground to doubt the defendant’s competency to stand trial even though the psychiatric evaluation, ordered by the trial court, found the defendant able to proceed and to defend himself adequately. Because of the "guarded” nature of the report, as well as the defendant’s curious insistence that he proceed without any assistance from assigned counsel, we concluded that the trial judge had a constitutional duty to order a hearing sua sponte (id., at 292-293). Likewise, in People v Bangert (22 NY2d 799), we held that a hearing should have been conducted — "whether or not counsel raised the issue” (id., at 800) — when the court received a presentence report which indicated that the defendant had a history of psychiatric problems and, thereby, created a genuine doubt of defendant’s competency to stand trial (see also, People v Sprague, 11 NY2d 951, revg 14 AD2d 901; People v Boundy, 10 NY2d 518).
Finally, in People v Armlin (37 NY2d 167), we remitted the case for a hearing to determine whether the defendant was competent at the time of sentencing because "reasonable ground existed to believe that the defendant was an incapacitated person”, again, notwithstanding the absence of any objection by defendant or his counsel to the trial court’s failure to do so in the first instance (id., at 168, 172 [emphasis added]). In Armlin, we took the opportunity to outline the *254 "well-settled” law of this State: there is no need for a competency hearing if the evidence presents "no proper basis” for questioning the defendant’s sanity; where "reasonable ground” exists, however, the trial court must order a hearing sua sponte because the defendant himself may be incapable of understanding the need for one; and the issue may be raised for the first time on appeal (id., at 171-172). According, we concluded in that case that, despite the court-ordered psychiatric report which stated that thé defendant was competent and despite the defendant’s failure to raise the issue, the defendant’s history of mental instability in the military service and his treatment as a psychiatric outpatient shortly before the commencement of criminal proceedings were sufficient to mandate a competency hearing.
The rule from these cases is clear. The trial court has a constitutional duty to conduct a competency hearing whenever the defendant’s fitness to proceed is reasonably in question. It is, therefore, equally clear that there is no merit to the majority’s contention that the trial court’s decision to dispense with the competency hearing was a matter properly within its discretion and justified by that court determination, without a hearing, that defendant was competent. Likewise, for reasons which follow, there is no merit to the other contention advanced by the majority that a competency hearing was not required because there was no "sufficient doubt” or "reasonable ground” on the record.
II
Contrary to the majority’s holding that the evidence "wholly fail[s] to establish that a 'sufficient doubt’ existed” to require a hearing, the abundant evidence in the record, in my view, clearly demonstrates the requisite "reasonable ground to doubt” defendant’s competency to stand trial, as a matter of law. The evidence before the trial court was, in fact, considerably stronger than in our prior cases where we either reversed the conviction or remitted for competency proceedings. Defendant’s history of mental difficulties, the expert psychiatric evaluations, defendant’s demeanor at trial, and his counsel’s exhortations to the court — the very factors identified in Drope (supra) and Robinson (supra) — all raised substantial question about defendant’s competency to proceed and, thereby, mandated that the trial court direct a hearing, sua sponte, to resolve the issue.
*255 Defendant had been committed to psychiatric institutions on many occasions, beginning in 1976 when he was 17 years old. At that time, he was admitted to Marcy Psychiatric Center for bizarre behavior, hallucinations and delusions. He was released 10 weeks thereafter, but was hospitalized on three subsequent occasions at the same institution: 8 weeks in 1977, 17 weeks in 1979, and 1 week in 1978. He was consistently diagnosed as schizophrenic and treated with antipsychotic drugs.
In 1981, during a visit to Florida, he was involuntarily admitted to the psychiatric unit of a hospital following an alleged auto theft. In the admission report defendant was, once again, described as bizarre, hallucinating and delusional; he was diagnosed as schizophrenic and treated with large doses of medication. Defendant was released after three weeks but, a few months later, in October 1981, was arrested again for auto theft, psychiatrically evaluated while in pretrial detention, and diagnosed as suffering chronic paranoid schizophrenia and antisocial personality. Defendant’s condition, the psychiatric report concluded, "precluded his ability to be functional for the next 12 months”.
Within that 12-month period, in July 1982, defendant returned to New York and, following several episodes of bizarre behavior, was again brought by his mother to Marcy Psychiatric Center. He was denied admission and two days later, the incident out of which the charges arose occurred. Hence, for at least six years prior to his arraignment, defendant suffered chronic severe psychiatric disorders. All of this information was presented to the trial court.
Moreover, the incident in question itself was revealing. Having walked a great distance, defendant arrived at the residence of a perfect stranger at 7:40 a.m. looking disheveled and unshaven. Without any indication that the owner’s automobile was for sale, defendant insisted that he be permitted to purchase it and instigated a physical altercation resulting in defendant’s taking the keys, starting the car, and attempting to run over the owner. At that point, the owner fired a pistol at defendant and shot him in the arm. Defendant swerved the car and drove into a ditch.[3]
*256 The court also had before it the reports of four psychiatrists, three of whom evaluated defendant as not being able to stand trial or to understand the proceedings against him. Dr. Weber, a private psychiatrist retained by defense counsel, studied defendant’s history, observed and interviewed him personally, and found defendant’s thinking to be bizarre and his understanding impaired. He diagnosed defendant as delusional, schizophrenic, and out of contact with reality. The two court-appointed psychiatrists, Dr. Rao and Dr. Kotwal, had initially reported that defendant was competent. Upon reexamination at the court’s direction, however, they found significant regression in defendant’s mental condition. Both concluded that defendant had difficulty concentrating, was unable to correlate his actions with their consequences, and lacked sufficient capacity to assist in his defense at trial. Both recommended that defendant be rehospitalized and be administered antipsychotic medications. On the basis of their reports, the trial court adjudged defendant an incapacitated person and ordered him committed for treatment.
The subsequent hospital report recommending defendant’s discharge was the only one to conclude that defendant was fit to proceed. A mere six days after defendant was committed to the Mid-Hudson Psychiatric Center by the court’s order, defendant was said to be fully alert, showing no signs of impaired judgment, thought abnormality or psychotic symptoms. The report was prepared without the benefit of any hospital records or summaries from defendant’s previous commitments, without an examination of defendant to determine specifically whether he was capable of testifying at his trial or assisting in his own defense, and with explicit reliance on defendant to ascertain his institutional history and response to drug therapy. Dr. Vandenbergh, a psychiatrist at the facility, diagnosed defendant as suffering from schizophrenia in remission, prescribed antipsychotic medications, and noted that "[t]he consensus was that he is fit to proceed”.
Especially in light of defendant’s lengthy prior history, Mid-Hudson’s very limited familiarity therewith, and the emphatic evaluations of the other three psychiatrists that defendant *257 was incompetent to stand trial, the "consensus” referred to in Dr. Vandenbergh’s "Clinical Summary” should have been received with a fair amount of skepticism. Moreover, just prior to sentencing, the court received another expert evaluation that defendant suffered serious mental illness, the detailed psychiatric report of the Social Security Administration which concluded that defendant was entitled to continued benefits for mental disability. The report noted that defendant had been thoroughly examined by government-retained psychiatrists, the last occasion being as recently as three months prior to his arrest. At that time, defendant was diagnosed as a chronic schizophrenic suffering from pronounced thought disorder and marked looseness of association.
Finally, as in People v Gonzalez (20 NY2d 289, supra), defendant’s attitude and behavior during the proceedings, specifically his insistence on waiving a competency hearing and his utter rejection of counsel’s advice, should have alerted the court to the need to order the hearing sua sponte. On several occasions, counsel advised the court that she believed defendant was incapable of proceeding and requested that a hearing on the issue be conducted.[4] Defendant angrily insisted otherwise and, at one point, attempted to discharge counsel. Thereafter, counsel requested the court to direct a hearing on *258 its own motion, noting that she would make the motion herself if defendant permitted. The court, however, refused the request stating, "I am not going to order a hearing. If you want a hearing, I’ll give you one.” The court decided that defendant was competent and accepted his guilty plea.
At sentencing, counsel reminded the court that, "I have felt all along in this matter that [defendant] was not competent to proceed”, but that defendant "has not been willing to debate this issue”. As the Supreme Court noted in Drope, although courts need not "accept without question a lawyer’s representations concerning the competence of his client, an expressed doubt in that regard by one with 'the closest contact with the defendant’ is unquestionably a factor which should be considered” (420 US, at 177, n 13 [citations omitted], supra). In addition to everything else, counsel’s repeated expressions of reservation to the court should have made it clear that a hearing was necessary.
Indeed, the court itself did recognize that defendant was suffering from mental illness and that his competency was in question. At sentencing, the court advised defendant that it was "reluctant” to impose a sentence of incarceration; that "[i]f the Court had an alternative” it would send defendant "to a state institution” to receive "psychiatric care * * * [I]f I could do that, I would * * * However, the Court has no choice”. Indeed, in sentencing defendant, the court stated for the record that "defendant has need for psychiatric care and treatment”, and it recommended that defendant "be committed to an institution * * * which will make that type of treatment available”.[5]
III
There can be no question that the evidence before the trial court, objectively considered, raised substantial doubt about defendant’s mental fitness to proceed. However that threshold *259 level of doubt might be described — as a "bona fide doubt” (see, Pate v Robinson, supra; Zapata v Estelle, 588 F2d 1017), "substantial question” (see, United States v Hayes, 589 F2d 811, cert denied 444 US 847; Rhay v White, 385 F2d 883), or "reasonable ground” for doubt (see, People v Armlin, supra; Silverstein v Henderson, 706 F2d 361; Lokos v Capps, supra)— the threshold was clearly exceeded here and no exercise of discretion could relieve the trial court of the resulting constitutional mandate to conduct a competency hearing. Defendant’s history, the psychiatric evaluations, defendant’s demeanor at the proceedings, and his attorney’s exhortations made it plain that a hearing was required. Indeed, even standing alone, defendant’s record of chronic delusions, hallucinations and bizarre conduct over the previous seven years, or the reports of three psychiatric experts that defendant was suffering from such thought disorder and irrationality that he was incapable of understanding the proceedings against him, were more than sufficient, as a matter of law, to raise the level of doubt constitutionally mandating an evidentiary hearing. Nevertheless, the trial court failed not only to direct a hearing, but even to apply the due process standard for determining whether one was needed.
The court refused to order a hearing sua sponte and, instead, simply rendered the very determination for which a hearing is constitutionally required — i.e., that defendant was competent. Under a long line of Federal and State decisions, the issue of defendant’s competency could properly be resolved only after an evidentiary hearing; the trial court had no discretionary authority to resolve the issue without one. Neither court below seemed to recognize this point. As the Federal courts and our own court have repeatedly held, the test for when a competency hearing is mandated as a matter of constitutional due process is not whether, on balance, the court believes the defendant to be incompetent, but whether the information before the court, objectively considered, reasonably raises a doubt as to his competence. Undeniably, that was the situation here.
Lastly, the point pressed by the People and repeated with approval by the majority, that the issue was not raised at the trial court, is, at best, difficult to comprehend. To say the least, it is incongruous to suggest that the issue, whether the trial court should have directed a competency hearing on its own initiative, could only be raised by counsel’s request for the hearing. Moreover, as the decisions of this court, the *260 Supreme Court, and the other Federal courts have made clear —the issue need not be raised at the trial court, it cannot be waived by the defendant, and it may be argued for the first time on appeal (see, e.g., People v Christopher, 65 NY2d 417 421; People v Armlin, supra, at 172; Pate v Robinson, supra, at 384; Silverstein v Henderson, supra, at 366).
Accordingly, I believe that defendant’s conviction should be reversed and the case remitted for a competency hearing prior to any further proceedings on the merits.
Chief Judge Wachtler and Judges Alexander and Titone concur with Judge Bellacosa; Judge Hancock, Jr., dissents and votes to reverse in a separate opinion in which Judges Simons and Kaye concur.
Order affirmed.

. (See, e.g., Drope v Missouri, 420 US 162, 176 ["sufficient doubt” of defendant’s competency to stand trial requires further inquiry; issue need "not clearly” be raised]; Pate v Robinson, 383 US 375, 384, 385 ["bona fide doubt”, "sufficient doubt”; it is "contradictory to argue” that a questionably competent defendant may "knowingly or intelligently” waive "right” to a competency hearing]; Silverstein v Henderson, 706 F2d 361, 369 [2d Cir], cert denied 464 US 864 ["reasonable ground” to question competency; defendant’s "failing to request” competency hearing does not relieve court of duty to order one sua sponte]; Lokos v Capps, 625 F2d 1258, 1261 [5th Cir] ["reasonably raised” doubt, objectively considered]; Reese v Wainwright, 600 F2d 1085 [5th Cir] ["bona fide doubt”; can be asserted at any time]; United States ex rel. Roth v Zelker, 455 F2d 1105 [2d Cir], cert denied 408 US 927 ["reasonable ground”; cannot be waived]; Rhay v White, 385 F2d 883, 886 [9th Cir] ["substantial question of possible doubt” imposed sua sponte duty]; compare with Maggio v Fulford, 462 US 111, 112 ["nothing appears in the record which suggests * * * a history of mental or emotional difficulties”]; and United States ex rel. Mireles v Greer, 736 F2d 1160 [7th Cir] [no "bona fide doubt” shown].)

. (See, e.g., People v Armlin, 37 NY2d 167 ["reasonable ground” required hearing sua sponte; need not be raised or preserved and cannot be waived]; People v Bangert, 22 NY2d 799, 800 [history of mental illness "indicated by” the presentence report; "court was bound” to conduct hearing "whether or not counsel raised the issue”]; People v Gonzalez, 20 NY2d 289, 293 [court required "sua sponte to order a hearing” though defendant "insisted that he was quite sane”]; People v Boundy, 10 NY2d 518, 521 ["some proof that a defendant was in fact insane at the time of plea” required trial on coram nobis application]; People v Smyth, 3 NY2d 184, 187 ["reasonable ground” to question competency triggers "duty of the court to direct” an inquiry]; People v Arnold, 113 AD2d 101, 103 [evidence "objectively considered, should reasonably have raised a doubt”; competency hearing required sua sponte]; see also, People v Christopher, 65 NY2d 417, 424 ["defendant whose *251 capacity is first put in issue” does not have "the capacity to waive a hearing”]; People v Jordan, 35 NY2d 577 [final psychiatric evaluation that defendant was competent did not justify trial court’s posthearing determination of competency in light of long history of serious mental incapacity].)

. As defendant himself described the incident to the sentencing court: "Well, I did have no intent of hurting him when I originally was walking down the street. I was just tired. I walked for miles. I walked to Rochester and back, just came back from Florida, no money. I was thrown out of my *256 house by my stepfather. I walked all night; and as I came through my feet were all blistered up, and I was tired of walking, and I just really didn’t care at the time what happened. I just got to go in and break into his house and maybe get some money to get out of this area. Well, then, I walked up to the door and then as the man, you know, asked the man for his keys, and then he reached for the 45, and that was the only time I pushed him.”

. For example, when the court accepted the conclusion of the Mid-Hudson report, counsel argued:
"[T]hey only kept him there for a period of one week ** * * I feel there is definitely a question here as to his capacity to proceed. And I think that before we proceed, that we should have a full hearing in this matter * * * I would request a hearing date be set and if the Court determines he is competent to enter a plea, I will allow him to do so. * * *
"[T]he cases which I was reading last week indicate that it’s the Court’s duty to see that a person is competent before he enters a plea, and that if there is some question about it, the Court must be satisfied by a fair preponderance that he is competent before he allows the plea and I am requesting the Court on its own motion order the hearing. * * *
"And how the Court can say I am satisfied based upon the reports from Mid-Hudson, who have never seen his psychiatrists’ records, because they never asked for them and I have them here, from the diiferent hospitals he was in, and how they can say, well, we disagree with the psychiatrists and therefore we will send him back and that’s sufficient for you to be satisfied he is a competent person, I don’t see how you can say that. * * *
"Your Honor, let me state I have talked with Mr. Gensler about this at length and if it was up to me, I would not accept the report [emphasis added].”

. Although defendant had insisted that his counsel not press the issue of his competency, his own remarks at sentencing, like those of the court itself, reveal the pervasiveness of the doubt about his competency to stand trial and the consequent necessity for a hearing on the issue: "I think I was temporarily insane at the time, not something I normally would do. Never had no criminal grounds before. Never arrested in this State; graduated high school, had four, five different jobs, and never hurt anyone. And I think that going to prison would not help me because I have bad nerves. I have had a breakdown and so if I could get sentenced to CNY in Marcy [Psychiatric Center], I think that would be better.”