Wachtler, J.
On the complaint of his teenage daughter, the defendant was indicted and, after a jury trial, convicted of incest. On June 4, 1968 he was sentenced to Attica Prison for a period of five to eight years.
The incident occurred on Labor Day (September 5), 1966. According to the complainant the defendant had spent most of that day drinking heavily. Shortly after she retired to bed, at about 11 o ’clock, the defendant entered her room, assaulted her and tried to have intercourse with her. This first attempt was unsuccessful primarily because the girl’s cries summoned her mother who escorted the defendant from the room. However within the hour the defendant returned, subdued his daughter, muffled her cries with a pillow and completed the act in the presence of a younger daughter who shared the room and was able to corroborate the complainant’s testimony at the trial.
The defense was insanity. The record shows that following arraignment the court found the defendant mentally unfit for trial, that he was committed, and the trial delayed, for over a year until having entered the initial stages of a remission it was determined that he was mentally competent to proceed. Prior to trial the defendant changed his plea from “ not guilty ” to “ not guilty by reason of insanity ” and later called Dr. Harry Paver to testify on Ms behalf.
Dr. Paver had been a practicing psycMatrist for over 40 years and, before returmng to private practice, had been chief *477 of psychiatry at Millard Fillmore Hospital. He had first examined the defendant about six months after the assault when, pursuant to the court’s order, he and two other psychiatrists were appointed to determine the defendant’s competence to stand trial. He testified that at that time the defendant was suffering from a severe schizophrenic reaction, a condition which he later stated would definitely be aggrevated by the consumption of alcohol. This diagnosis was confirmed by two subsequent examinations and by a review of the defendant’s psychiatric records which revealed that he had been suffering from this same illness for over 10 years. In fact on three or four occasions during the past 10 years he had been committed to mental institutions because of this affliction. Dr. Faver concluded that in September of 1966, because of this mental condition, the defendant was unable to know or appreciate the nature and quality of his acts or that they were wrong.
On cross-examination he admitted that the defendant had periods of remission during which his mental condition would improve although the illness would not be “ absolved ”. Nevertheless he maintained that at the time of the initial examination the symptoms were quite manifest, indicating that the disease was well advanced and thus evident at least six months earlier during the time of the assault.
The People offered no expert testimony to rebut the defendant’s evidence of insanity. Because of this the defendant claims that his guilt was not proven beyond a reasonable doubt. The People’s position is that the presumption of sanity was sufficient and that there was no need for them to offer additional evidence on the issue.
These arguments raise basic questions concerning the procedural aspects of the insanity defense. The defense of insanity has had an irregular history in New York and throughout the Nation, particularly on the question as to who should have the burden of proof and what the burden entails. (See Weihofen, Mental Disorder As A Criminal Defense, pp. 212-272 [1954]; Modern Status of Rules as to Burden and Sufficiency of Proof of Mental Irresponsibility in Criminal Case, Ann., 17 ALR 3d 146.) Under the English view, which at one time had some support in this State (see, e.g., Sellick’s case 1 N. Y. City Hall Recorder 185 [1816]; People v. Sprague, 2 Parker Cr. Rep. 43 *478 [1849]), insanity is considered an affirmative defense and the burden is upon the defendant to prove his mental capacity beyond a reasonable doubt (Davis v. United States, 160 U. S. 469, 479). New York rejected this approach in 1857 in the case of People v. McCann (16 N. Y. 58) which was apparently the first occasion this court had to consider the issue. .The court disagreed however as to where the burden rested and the degree of proof to be required.
Judge Bower felt that the well-established common-law presumption of sanity was sufficient to place the burden on the defendant to establish the defense affirmatively but only by a preponderance of the evidence — on the theory that the beyond-a-reasonable-doubt standard was intended for the defendant’s protection and should only bind the prosecutor (People v. McCann, supra, at p. 59 et seq.).
On the other hand Judge Bbowr, noting that mental capacity was an element of the crime, placed the burden on the prosecutor to prove sanity beyond a reasonable doubt, the quantum necessary to overcome the presumption of innocence. Balancing the conflicting policies he concluded that the presumption of sanity was not of sufficient weight to shift the burden of persuasion to the defendant (People v. McCann, supra, at p. 64 et seq.).
In subsequent cases this court refused to resolve the issue (People v. Schryver, 42 N. Y. 1; Flanagan v. People, 52 N. Y. 467) quite candidly admitting that they “ prefer [red] to leave it precisely where the cases cited leave it, an open question, so far as judicial authority in this State is concerned ’’. (Flanagan v. People, supra, at p. 471.)
There the matter lay for over 20 years until we were confronted with a case in which the trial court had, in effect, charged the jury both ways. Under that charge “ ‘ This allegation of insanity is an affirmative issue which the defendant is bound to prove ’ ” but “ if ‘ there is a well-founded doubt whether this man was sane at the time ’ ” he committed the act “ ‘ you will acquit him ’ ” (Brotherton v. People, 75 N. Y. 159, 163 [1878]).
This time when the issue reached the court the burden was finally assigned to the prosecutor to prove the defendant’s sanity beyond a reasonable doubt. “ Crimes can only be com *479 mitted ” the court said “ by human beings who are in a condition to be responsible for their acts, and upon this general proposition the prosecutor holds the affirmative, and the burden of proof is upon him * * * and if a reasonable doubt exists as to whether the prisoner is sane, or not, he is entitled to the benefit of the doubt, and to an acquittal ” (Brotherton, supra, at pp. 162, 163). Evidently Judge Beowit’s opinion in the McGatm case had at last prevailed although in adopting this position the court in its decision did not refer to that or any other case.
Subsequently the Brotherton rule was consistently adhered to and reaffirmed (O’Connell v. People, 87 N. Y. 377; Walker v. People, 88 N. Y. 81; People v. Egnor, 175 N. Y. 419; People v. Kelly, 302 N. Y. 512)[1] and in 1965 was expressly codified by the Legislature (Penal Law, § 30.05, subd. 2, eff. Sept. 1, 1967). Thus there is no doubt that upon the trial of the case now before us, the People had the burden of proving the defendant’s sanity beyond a reasonable doubt (People v. Kelly, supra).
Implicit in the Brotherton holding is the conclusion that the presumption of sanity is not of sufficient weight to shift the burden of persuasion to the defendant. But the presumption was not entirely cast aside. It was retained and assigned a lesser role which the court explained in a relatively brief and summary fashion: “ Sanity being the normal and usual condition of mankind, the law presumes that every individual is in that state. Hence a prosecutor may rest upon that presumption without other proof. The fact is deemed to be proved prima facie. Whoever denies this or interposes a defense upon its untruth, must prove it; the burden, not of the general issue of crime by a competent person, but the burden of overthrowing the presumption of sanity and of showing insanity, is upon the person who alleges it, and if evidence is given tending to establish insanity, then the general question is presented to the court and jury, whether the crime, if committed, was committed by a person responsible for his acts, and upon this question the pre *480 sumption of sanity, and the evidence, are all to be considered, and the prosecutor holds the affirmative, and if a reasonable doubt exists as to whether the prisoner is sane, or not, he is entitled to the benefit of the doubt, and to an acquittal.” (Brotherton v. People, supra, at pp. 162-163.)
This basic concept was reaffirmed and summarized in subsequent opinions (see, e.g., O’Connell v.People, 87 N. Y. 377, supra; Walker v. People, 88 N. Y. 81, supra; People v. Egnor, 175 N. Y. 419, 426, supra) and the presumption itself was for a time made a statutory one (former Penal Law, § 815). But the precise meaning of this aspect of the Brotherton case — fixing the initial burden of coming forward with evidence of insanity — is not nearly as well settled in this State as is the primary holding concerning the ultimate burden of persuasion.
The fact that this approach has spread to other jurisdictions and has been discussed by scholarly commentators is not particularly enlightening for the results have been diverse almost to the point of chaos. (Ann., op. cit., 17 ALR 3d 146.)
Confusion exists even on the most fundamental question as to the reason for the presumption. In Professor Weihofen’s view it is a ‘ ‘ statistical generalization about most human beings. It is only a lawyer’s way of saying that there are a lot more sane people in the world than insane. The odds are, therefore, that any given individual, picked at random, is probably sane ”. (Weihofen, op. cit., p. 218.) But Professor McCormick in his treatise on evidence does not classify the presumption among those based on “ probability ” (McCormick, Evidence, p. 641). He considers it a mere ‘ ‘ procedural convenience ”. “ In a criminal case it is convenient to require the accused, if he wishes to raise the question of sanity, to produce evidence of his insanity. This saves the state the fruitless trouble of proving sanity in the great number of eases where the question will not be raised. The vehicle for accomplishing this saving of time is the presumption of sanity ”.
No matter what the rule may be elsewhere it is apparent that in this State the presumption of sanity is recognized as something more than a procedural concoction used to shift the burden of coming forward with evidence of insanity. The language of the Brotherton (p. 162) opinion clearly establishes that the presumption is rationally based on a fact of common experience *481 that most men are sane — ‘ ‘ Sanity being the normal and usual condition of mankind ” — and thus in most trials there should be no need for the prosecutor to introduce evidence of the defendant’s sanity.[2]
Another point on which the courts are widely divided concerns the quantum of evidence necessary to overcome the presumption. At the poles the. standard varies from “ slight evidence of insanity ” (Howard v. United States, 232 F. 2d 274, 276; Hall v. United States, 295 F. 2d 26) to “ a preponderance ” (In re Dennis, 51 Cal. 2d 666; State v. Brown, 36 Utah 46) and includes “ substantial ” (Hartford v. United States, 362 F. 2d 63) “ some evidence of insanity ” (Tatum v. United States, 190 F. 2d 612; United States v. Currens, 290 F. 2d 751) evidence “ tending to show insanity ” {Snider v. State, 56 Neb. 309) “ evidence sufficient to raise a reasonable doubt ” (see cases collected in 17 ALR 3d, at p. 175) and “ evidence, tending to prove insanity * * * which is sufficient to raise a reasonable doubt of sanity ” (People v. Skeoch,. 408 Ill. 276, 280).
This diversity may well be purely semantic for even in the Federal jurisdictions where the issues have been most frequently litigated the courts have been unable to give a “ sharp or qualitative definition ” to the degree of proof required (Hawkins v. United States, 310 F. 2d 849). However it has been held that the requirement of “ some evidence ”, “Certainly * * * means more than a scintilla, yet, of course, the amount need not be so substantial as to require, if uncontradicted, a directed verdict of acquittal ”. (McDonald v. United States, 312 F. 2d 847, 849.)
Brotherton of course merely requires “ evidence * * * tending to establish insanity ” (Brotherton v. People, 75 N. Y. 159, 163, supra, emphasis added) a. standard which we have never abandoned or varied (O’Connell v. People, 87 N. Y. 377, supra; Walker v. People, 88 N. Y. 81, supra; People v. Egnor, 175 N. Y. 419, 426, supra). This would seem to require something less than “ substantial evidence ”, the degree of proof required to rebut “ most, but not all ” presumptions recognized in this State (Richardson, Evidence. [10th ed.], § 58, p. 37).
The presumption in fact can be challenged by the slightest creditable attack, for we have held that even “ non-psychiatric *482 proof ” alone might overcome the presumption and sustain a verdict of acquittal. (Matter of Lee v. County Ct. of Erie County, 27 N Y 2d 432; see, also, Walsh v. People, 88 N. Y. 458, insanity in family; People v. Nino, 149 N. Y. 317, supra, reversible error to exclude bizarre statements made by defendant about the victim prior to the crime; People v. Taylor, 138 N. Y. 398, mental state of the defendant between the homicide and the trial; People v. Kohlmeyer, 284 N. Y. 366, held reversible error to exclude psychiatric record of the defendant’s mother; People v. Kelly, 302 N. Y. 512, 518, supra, defendant entitled to charge that the People’s proof as to the circumstances of the crime “ may, by its very nature, have within it proof that the defendant was not responsible for his actions ”; cf. People v. Sherwood, 271 N. Y. 427, the details of a life of hardship considered relevant.)
However we have never held proof of this nature adequate to rebut the presumption as a matter of law. On the contrary it has been said that under the rule prevailing in this State the presumption remains as evidence until the end of the case and that the introduction of rebuttal proof merely presents a jury question as to whether the presumption has. been overcome (Richardson, op. cit., § 63). The authority for this rule derives from the following comment in the Brotherton decision: “ if evidence is given tending to establish insanity, then the general question is presented to the court and jury whether the crime, if committed, was committed by a person responsible for his acts, and upon this question the presumption of sanity, and the evidence, are all to be considered ”. (Brotherton v. People, 75 N. Y. 159, 163, supra, emphasis added.)[3]
*483 In light of this history we have concluded that although the presumption may be sufficient to sustain the People’s burden in the absence of evidence to the contrary (Matter of Lee v. County Ct. of Erie County, 27 N Y 2d 432, supra) or in the face of weak rebuttal proof, it cannot be given such weight when confronted by evidence of the quality introduced by the defendant during this trial. As we have noted, this evidence consisted not only of the opinion testimony of a qualified psychiatrist but also included uncontradicted evidence of a long history of mental illness extending over a period of 10 years, requiring four commitments and followed by further commitments after arraignment, all occasioned by the same mental illness in issue at the trial. The fact that the prosecutor chose to rely on the presumption rather than meet this challenge with contradictory proof is inexplicable. The conviction therefore must be reversed (see People v. Ledwon, 153 N. Y. 10) and the indictment dismissed (CPL 470.20, subd. 2; 470.40, subd. 1; and compare Cohen and Karger, Powers of the Court of Appeals, § 205, pp. 768-770).
Accordingly the order of the Appellate Division should be reversed and the indictment dismissed.

. In 1896 in the case of People v. Nino (149. N. Y. 317, 328) this court seemingly relaxed the People’s burden by stating that “ the prosecution must prove sanity by a preponderóme of evidence” (emphasis added). However, in People v. Egnor (175 N. Y. 419, 427), the court disclaimed this statement as having been "inadvertently made”.

. Indeed if it were otherwise the device might well be considered by some to violate the due process guarantee (Tot v. United States, 319 U. S. 463, 468).

. The implications of this language have been criticized (Weihofen, op. cit., pp. 216-219; Richardson, op. cit., § 63) and challenged in our court on two occasions without success (People v. Tobin, 176 N. Y. 278; People v. Davis, 299 N. Y. 745). Today a majority of the court, despite this criticism, finds no reason to disturb these precedents at this time, in this case. Although I take a different view and would hold that the presumption of sanity may be rebutted as a matter of law and that the evidence submitted by the defendant during this trial was fully sufficient to do so (see, e.g., People v. Brown, 19 A D 2d 599) this is of no consequence here since we are agreed that whether the presumption survived as evidence or not the People failed to establish the defendant’s guilt beyond a reasonable doubt.