OPINION OF THE COURT
Herbert A. Posner, J.
THE ISSUES
Insanity was the only defense at the trial of 16-year-old Robert Jandelli for the murder of his 26-year-old sister. After being sequestered for 10 days[1] and deliberating for *385 10 hours, the jury brought back a verdict of murder in the second degree.
The defendant contended[2] in both a motion for a trial order of dismissal (at the end of the People’s direct case) and in a motion to set aside the jury’s verdict, that it was error to permit the People to rely upon the presumption of sanity and rest their direct case without presenting any evidence that the defendant was sane at the time of the commission of the crime.[3]
In addition to this interesting approach to the “burden of proof” issue, the court, sua sponte, raised another novel issue by refusing the prosecution’s request to charge the jury on the “presumption of sanity”.
THE FACTS
On January 29, 1981, at about 11:45 p.m., the 16-year-old defendant, Robert Jandelli, killed his 26-year-old sister, Carol Jandelli, by striking her about the head with a hammer and then slitting her throat with a knife. The defendant had no prior history of mental or emotional illness and there was no evidence of any particular animosity between him and the victim. He was discovered by the police on the morning following the homicide, wandering around a subway station with his wrists slit. When he told the police he had killed his sister, they investigated the house in which he resided with his parents and the victim and found her body. The defendant was arrested and after receiving medical treatment for his wounds, he was interviewed by an Assistant District Attorney. In this interview, which was tape recorded, the defendant gave a lucid and detailed account of the killing.
According to Robert, he and his sister Carol were alone in the house because his parents were away baby-sitting another daughter’s children. Carol was in their parents’ bedroom on the first floor, and Robert was on his way up to his room on the second floor, carrying a hammer which he *386 was going to use to secure some stereo equipment. As he stated in the interview, in response to questions by the Assistant District Attorney:
“I went to say good night to her and then I hit her with the hammer a few times. I don’t know how many, exactly * * *
“No reason, just did. No reason * * *
“She was pretty hurt. She looked like she was almost dead ***
“She was making gurgling sounds with her mouth, so I took a knife and cut her throat * * *
“Cause she was like, cause she was about to die and she was making these sounds and she sounded like she was in misery. So it was either let her lay there and be in misery or finish it off.”
The defendant was indicted and tried for murder in the second degree and criminal possession of a weapon in the fourth degree. The People’s case consisted essentially of the taped interview in which Robert Jandelli confessed killing his sister and the testimony of the arresting officer and medical examiner. The defense on its case called a psychiatrist who testified that, in his opinion, the defendant lacked criminal responsibility under section 30.05 of the Penal Law and in rebuttal, the People called three psychiatrists, each of whom was of the opinion that the defendant did not lack such criminal responsibility.
The jury was instructed that one of three possible verdicts could be returned as to each of the crimes charged: guilty; or not guilty; or not responsible by reason of mental disease or defect. The jury found the defendant guilty of both murder in the second degree and criminal possession of a weapon in the fourth degree.
It was clear from the start that the only defense in this case was insanity. The defendant was sent to Kings County Hospital following his arrest and spent several months there undergoing psychiatric examination. A pretrial notice of intent to proffer psychiatric evidence, as required by CPL 250.10, was served on his behalf and during voir dire and opening, defense counsel informed the jury that the *387 defense in the case would be insanity. The defendant contends that in this context, it was incumbent upon the People, as part of their direct case, to prove that the defendant was sane and to present any evidence which supported that conclusion. The defendant, therefore, now seeks to have the verdict set aside, maintaining that the court erred when it permitted the People to call three psychiatrists as rebuttal witnesses who should have been called on the People’s direct case. This (he claims) gave the prosecution an unfair tactical advantage and prejudiced him.
THE INSANITY DEFENSE
“Insanity is considered, in the jurisprudence of all civilized nations, to be a defense against punishment for crime.” The reason is that it may negate intent and animus, both of which are essential elements of crime. “Intent involves an exercise of reasoning powers, in which the result of the criminal act is foreseen and clearly understood * * * Animus involves an exercise of reasoning powers, in which the result of the criminal act is recognized as being contrary to the rules of law and justice.” (Smoot, Insanity, § 448, p 372.)
The New York insanity defense is set forth in section 30.05 of the Penal Law which provides:
“1. A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity to know or appreciate either:
“(a) The nature and consequence of such conduct; or
“(b) That such conduct was wrong.
“2. In any prosecution for an offense, lack of criminal responsibility by reason of mental disease or defect, as defined in subdivision one of this section, is a defense.”
THE BURDEN OF PROOF
The United States Supreme Court has never found a constitutional requirement that the People bear the burden of proof on the issue of defendant’s sanity. (Patterson v New York, 432 US 197; also see Walker v Butterworth, 457 F Supp 1233, 1245.) However, in this State the New York *388 Court of Appeals in Brotherton v People (75 NY 159), assigned to the prosecution the burden of proving the defendant’s sanity beyond a reasonable doubt. The Brotherton decision, however, did not cast aside the presumption of sanity. (The court stated (pp 162-163) that not only was it prima facie proof of sanity upon which the prosecutor could rest and thereby place the initial burden of coming forward and showing insanity upon the defendant, but also “if evidence is given tending to establish insanity, then the general question is presented to the court and jury whether the crime, if committed, was committed by a person responsible for his acts, and upon this question the presumption of sanity, and the evidence, are all to be considered”.
The so-called “presumption of sanity” is rationally based on a fact of common experience — that most men are sane. Therefore, the “presumption of sanity” is a presumption of a fact which not only suffices to enable the prosecution to make out a prima facie case, but continues as evidence in the case, for if “the presumption is overcome and ceases to exist in the case, the fact or facts which gave rise to the presumption still remain and may furnish a basis for a logical inference.” (Richardson, Evidence [10th ed], § 58, p 36; § 63, p 43; also see People v Leyva, 38 NY2d 160, 168-169, n 3.)
While Brotherton and subsequent decisions in this State settled the ultimate burden of proof on the issue of defendant’s sanity, there remained confusion as to whether the initial burden of coming forward with evidence of insanity to rebut the presumption was upon the defendant. The precise meaning of this aspect of the Brotherton holding was discussed years later in People v Silver (33 NY2d 475). In Silver (p 480), the Court of Appeals acknowledged that there existed confusion “even on the most fundamental question as to the reason for the presumption”, with some authorities considering it to be presumption “based on ‘probability’ ”, while others consider it a mere procedural convenience.
The Silver decision concluded (p 483) that “although the presumption may be sufficient to sustain the People’s burden in the absence of evidence to the contrary * * * or in the face of weak rebuttal proof, it cannot be given such *389 weight when confronted by evidence of the quality introduced by the defendant during this trial.” The court held that in view of the evidence of mental disability introduced by the defendant, the presumption of sanity was not sufficient to sustain the People’s burden and since the prosecutor chose to rely on the presumption rather than meet this challenge with contradictory proof, the People had failed, as a matter of law, to establish the defendant’s guilt beyond a reasonable doubt. (Also see People v Rivera, 78 AD2d 1002.)
Nevertheless, a majority of the court in People v Silver (supra, p 482, n 3) found no reason, in that case, to disturb the Brotherton precedent that the presumption of sanity continues and is to be considered by the trier of facts with the other evidence on the issue of defendant’s sanity. Such treatment of the presumption of sanity which results “in continued * * * use of an arguably rebutted presumption has been criticized by legal commentators * * * and rejected by most other jurisdictions”. (Walker v Butterworth, supra, p 1244.) In fact, Judge Wachtler, the writer of the majority opinion in the Silver case noted (p 482, n 3) that he “would hold that the presumption of sanity may be rebutted as a matter of law”.[4] The “presumption of sanity” is the only nonstatutory presumption which inures to the benefit of the prosecution. The presumption of innocence which continues until a verdict is found, is a presumption in favor of the defendant. Other presumptions, such as the presumption against suicide and the presumption of marriage, which are employed in civil actions, are not available to the prosecution in criminal actions. (Richardson, Evidence [10th ed], § 61, p 42; § 65, p 44.) Continued use of the presumption of sanity, after it has been rebutted by evidence which, if uncontradicted, is sufficient to require an acquittal, creates a danger that the presumption will be used by the jury to resolve any doubt created by the People’s contradictory evidence in the People’s favor. This *390 would displace the burden of proof on the issue of insanity from the prosecution to the defense.
This court did not include the presumption of sanity in its charge to the jury in the instant case for it found that the psychiatric evidence introduced by the defense, combined with the facts and circumstances surrounding the crime, overcame the presumption and if, at that point, the prosecutor had relied solely upon the presumption of sanity, without contradictory proof, the People would have failed to establish the defendant’s guilt beyond a reasonable doubt. (See People v Silver, supra; People v Rivera, supra.) When such is the state of the evidence at the close of the defendant’s case, to charge the jury that there remains for their consideration a presumption of sanity would have the practical effect of placing the burden of proof on the issue of insanity upon the defendant. Accordingly, the presumption of sanity was removed from the jury’s consideration in this case and the jury was instructed to determine the issue of defendant’s sanity solely from the evidence adduced at the trial.[5]
The court cannot, however, accept the defense contention that alluding to an insanity defense in voir dire and opening, following service of a pretrial notice of intent to present psychiatric evidence, is sufficient to shift the burden to the People to come forward with direct evidence of defendant’s sanity. Such a ruling would be in direct contravention of the Brotherton and Silver decisions, and their progeny. These all place the initial burden upon the defendant to come forward with sufficient evidence to rebut the presumption of sanity, before the People are required to prove the defendant sane beyond a reasonable doubt. (People v Santarelli, 49 NY2d 241, 248; also see People v Sullivan, 39 NY2d 903; Matter of Lee v County Ct. of Erie County, 27 NY2d 432, cert den 404 US 823.)
That the People’s proof established what many might consider an irrational crime did not mandate a finding that the defendant was legally insane at the time he committed *391 the crime.[6] There was, in fact, evidence in the People’s direct case which controverted a finding of legal insanity. In the tape recorded interview introduced by the prosecution, the defendant gave a lucid and detailed account of the homicide including details of the television shows he was watching just before it happened and the attempts he made to kill himself afterwards. The defendant’s complete recollection of the details of the crime, and his subsequent suicide attempts, may have substantiated (in the jury’s mind) that he was not legally insane. (Cf. People v Higgins, 5 NY2d 607.)
If the defendant had proceeded without calling any psychiatric witnesses, the People, having rested their case, could have been precluded from calling expert witnesses in rebuttal. (See Richardson, Evidence [10th ed], § 459; CPL 260.30.) The defendant, however, elected to call a psychiatrist as a witness in support of his insanity defense. This psychiatrist testified that, in his opinion, at the time he killed his sister, the defendant did not appreciate either the nature and consequences of his conduct or that it was wrong. According to this expert, due to organic brain damage, the defendant suffered an episode of Penfield’s Automatism during which he had no control over his actions and involuntarily killed his sister. The prosecution then called three psychiatrists, in rebuttal, who testified that they found no evidence that the defendant had the type of localized brain damage which could have triggered Penfield’s Automatism. These experts stated that this is a type of epileptic seizure during which the individual behaves in a robot-like manner and performs aimless, undirected acts of which he has little, if any, recollection, and that the defendant’s conduct and detailed recollection were inconsistent with such an episode. They were of the opinion that at the time of the homicide, the defendant knew and *392 appreciated the nature and consequences of his conduct and that it was wrong.
The defendant errs in equating the psychiatrists called by the People to rebut the testimony of the defense psychiatrist with eyewitnesses to a crime first called to rebut an alibi defense. There is no presumption concerning a defendant’s presence at the scene of a crime and evidence which places him there is properly part of the People’s direct case and should not be presented in rebuttal of an alibi defense. (People v Fluker, 51 AD2d 1045; People v Richardson, 25 AD2d 221, 225.) On the issue of insanity, however, the People do have a presumption of sanity and the prosecutor is not required to introduce any evidence until the defendant comes forward with evidence of insanity which, if uncontradicted, would require a verdict of acquittal. (People v Silver, 33 NY2d 475, supra.)
CONCLUSION
The jury found the defendant guilty of the crimes charged and it has not been demonstrated that this finding should be disturbed. Therefore, the defendant’s motion to set aside the verdict is denied.

. The morning after the Hinckley jury came in with their verdict, defendant’s counsel made a motion for a mistrial on the claim that the reaction to the Hinckley verdict would make it impossible for his client to receive a fair verdict since the defenses were the same in both cases. Fortunately, after questioning each juror, it was learned that the jury had not yet had an opportunity to be exposed to any inflammatory media coverage on the Hinckley verdict. To insure that this would not happen during the balance of the trial, the court ordered the jury sequestered.

. The defendant’s argument is an extension of the reasoning in People v Silver (33 NY2d 475).

. After the defense rested, the People did present three medical experts to rebut the defendant’s psychiatrist and “to prove beyond a reasonable doubt” defendant’s sanity.

. In his footnote (p 482, n 3), Judge Wachtler states the majority “finds no reason to disturb these precedents at this time, in this case * * * since we are agreed that whether the presumption survived as evidence or not the People failed to establish the defendant’s guilt beyond a reasonable doubt.” However, in Jandelli, the People did establish the defendant’s guilt beyond a reasonable doubt.

. This court did not make any mention of sanity in its charge. In the Hinckley case, the Judge followed the Federal rule and instructed the jury that while every man is presumed to be sane, “that presumption no longer controls when evidence is introduced that he may have a mental disease or defect.”

. In the voir dire of the jury, conducted to determine if any prejudice had been occasioned by adverse publicity following the rendition of the verdict in the Hinckley case, a female juror indicated that she felt all murderers were insane (a view shared by Rev. McNicholas, who was a defense witness). However, the juror agreed that the legal definition of insanity did not accord with hers and stated that she would follow the legal definition in determining the defendant’s legal sanity. That she did so is reflected by the verdict.