■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NEIL T. SCHIAVI, Appellant. — Judgment affirmed. Memorandum: After a Bench trial, defendant was convicted of criminal possession of a weapon in the third degree (Penal Law, § 265.02, subd [4]) and unlawful imprisonment in the first degree (Penal Law, § 135.10). Proof that defendant committed the physical elements of the crimes was unrefuted. The sole defense offered was that because of mental disease or defect, defendant was not criminally responsible for his conduct (Penal Law, § 30.05). Two psychiatrists testified at trial that at the time the crimes were committed, defendant was suffering from reactive or disassociative disorder, which each described as a transitory mental disease or defect. Their testimony was in agreement as to the salient features of disassociative disorder. They stated that the episode of disorder is caused by stress; that during the period of disorder the afflicted person is in a daze; and that after such an episode the afflicted person has no recall of events which occurred during the episode. Relying upon defendant's claim of amnesia from the time when he showered on the morning of November 10, 1981 until about noon of that day when defendant's father arrived and spoke to him at the crime scene, the psychiatrists agreed that during the entire period defendant lacked substantial capacity to know or appreciate the nature and consequences of his

conduct or that such conduct was wrong. Each psychiatrist conceded, however, that if defendant had lied about his lack of recall, the diagnosis of disassociative disorder would not have been made. One psychiatrist testified that if he believed that defendant lied about his ability to recall the criminal event he would characterize defendant as "malingering." A police officer testified, without objection, that when defendant was taken into custody at the crime scene, he was advised of his rights and "he stated he already had an attorney representing him on another matter and he didn't want to talk to us." The police officer also testified that when defendant's father had asked whether he would be allowed to take defendant home, defendant responded that "They are not going to just let me walk out of here, they can't; I know what is going to happen, I am going to go to jail." In its decision, the trial court noted the lack of objective tests to determine the existence of disassociative disorder, and found that defendant had no prior history of psychiatric or emotional difficulty. Relying upon the testimony of the police officer as to the statements made by defendant to him and to defendant's father in his presence, the court concluded that defendant had "memory of the incident" and that: "Throughout this incident, the defendant knew who he was and what he was doing." Where, as here, the People present no psychiatric proof and the psychiatric opinions proffered are that the defendant was not criminally responsible, a verdict of guilty can be, but is not necessarily, against the weight of the evidence (*People v Silver*, 33 NY2d 475; *People v Barnes*, 98 AD2d 977; *People v Rivera*, 78 AD2d 1002). Where the record supports a valid basis for rejection of the psychiatric opinions, the presumption of sanity will be sufficient to satisfy the People's burden (see, e.g., *People v Lancaster*, 65 AD2d 761; *People v Woodworth*, 47 AD2d 991; *People v Thompson*, 35 AD2d 686). Here the quality of the psychiatric proof offered by defendant was not compelling. The diagnosis that defendant suffered from disassociative disorder was wholly dependent upon defendant's claim of amnesia. The trial court's findings that defendant had cognition during the commission of the crimes and could recall those events are supported by the evidence and undermined the essential factual predicate for the psychiatric opinions. Defendant's statements to the police officer and his father are equally as pertinent to the time of the criminal event as they are to the time that they were made. We thus disagree with the dissenter's view that the statements are not relevant to defendant's state of mind during the commission of the crimes and we conclude that the trial court was justified in rejecting the psychiatric opinions and in applying the presumption of sanity (see *People v Silver, supra; People v Wood*, 12 NY2d 69). The other issues raised by defendant are either without merit or were not preserved for review. All concur, except Green, J., who dissents and votes to reverse and remit the matter for further proceedings, in accordance with the following memorandum.

Green, J. (dissenting). I must dissent because the People did not establish defendant's sanity beyond a reasonable doubt. The charges resulted from an incident at his former girlfriend's place of employment where he pointed a pistol at her and attempted to take her away in an automobile. When defendant's father was called to the scene, the defendant turned the gun over to him. The defendant introduced testimony from a board-certified psychiatrist Dr. Kishor Sangani, who had been selected by the prosecution and had examined defendant on two different occasions. His opinion was that at the time of the incident, defendant was suffering from a reactive or disassociative disorder, which is a mental disease and is transitory in nature, brought on by severe stress, during which the defendant is in a deep daze, has no knowledge of the consequences of his acts or that they are wrong and cannot later recall what he did during the period of disorder. The defense also called Dr. Nathan

Bernstein, a board-certified psychiatrist, who examined defendant at the request of defense counsel. Dr. Bernstein testified he had examined defendant on six different occasions and reviewed the results of an electroencephalogram (E.E.G.) of the defendant. His opinion was that at the time of the incident, defendant was suffering from a disassociative reaction which "is a reaction in which the person loses control of himself and contact with reality and his ability to consciously think of anything and he does not have memory for this event but goes about acting as if he might be normal or acting normally." The doctor further stated that defendant lacked substantial capacity to know or appreciate the nature and consequences of his conduct or that such conduct was wrong. Also received in evidence were two reports by psychiatrists who had examined defendant after his arraignment by order of the Whitestown Town Justice. Dr. R. Rao reported that at the time of his examination the defendant did have the capacity to understand the proceedings against him and to aid in his defense. However, the doctor's psychiatric evaluation concluded "during the episode resulting in the presently pending charges, this young man was experiencing signs and symptoms of a brief reactive psychosis triggered by a recognizable psychosocial * * * amount of stress in this young man * * * There are also some suicidal tendencies displayed during the episode. He, at the time was in a state of panic, [and] it wasn't until an individual he adequately trust[ed], namely, his natural father, showed up on the scene, [that he] came back to reality." Dr. Rao's diagnosis was "Brief Reactive Psychosis in Remission." Dr. J. Kotwal reported that the defendant did have the capacity to understand the proceedings against him and to assist in his defense. The doctor's psychiatric evaluation stated "[a]ll he can remember is when he found himself in the Marcy Psychiatric Center parking lot and heard voices after which he recognized his father". Dr. Kotwal's impression was "Brief Reactive Psychosis". The People offered no expert testimony as to defendant's mental capacity at the time of the incident. Rather, they relied solely upon the presumption of sanity and the testimony of Investigator John Allen, of the Oneida County Sheriff's Department, concerning two statements made by defendant after he had been taken into custody and advised of his rights. Once the defendant raised the defense of insanity (Penal Law, § 30.05, subd 1), the People had the burden of disproving insanity beyond a reasonable doubt (Penal Law, § 30.05, subd 2; § 25.00, subd 1). As we have recently stated, "[a]lthough the presumption of sanity may be sufficient to sustain the People's burden in the absence of evidence to the contrary or in the face of weak rebuttal proof (*People v Wofford,* 46 NY2d 962; *People v Lancaster,* 65 AD2d 761), the presumption cannot be given such weight here in light of the quality of the psychiatric evidence introduced at trial (see *People v Silver,* [33 NY2d 475,] 483; *People v Rivera,* [78 AD2d 1002])" (*People v Barnes,* 98 AD2d 977). The quality of the psychiatric evidence in the instant case is no less compelling. Here each psychiatrist concluded that at the time of the incident in question the defendant was suffering from a mental disorder that prevented him from appreciating the consequences of his acts. Even the psychiatrist selected by the prosecution to examine the defendant concluded that defendant's mental disorder was transitory in nature. Therefore, the statements which the defendant made after the incident are not relevant to his state of mind at the time of the incident. The expert testimony regarding defendant's insanity, at the time the crime was committed, went unrebutted (cf. *People v Wofford, supra*). The judgment of conviction should be reversed and the case remitted to the trial court with direction to enter a directed verdict of not responsible by reason of mental disease or defect (CPL 470.45; *People v Barnes, supra; People v Rivera, supra,* p 1003). The court should then issue an examination order pursuant to

CPL 330.20 (subd 2). (Appeal from judgment of Oneida County Court, Buckley, J. — criminal possession of weapon, third degree, and another offense.) Present — Dillon, P. J., Hancock, Jr., Green and Schnepp, JJ.