Hancock, Jr., J.
(dissenting). "Crimes can only be committed by human beings who are in a condition to be responsible for their acts, and upon this general proposition the prosecutor holds the affirmative, and the burden of proof is upon him” (Brotherton v People, 75 NY 159, 162 [Church, Ch. J.]). Derived from fundamental principles in the common law and in the the early decisions of our nation’s leading courts, this rule is basic to the criminal jurisprudence of this State and, I believe, the due process of law guaranteed by the New York Constitution.
In a sharp departure from this basic rule and from the long line of precedents which have recognized and enforced it, the *201 majority holds that legal sanity is not an essential element of the crime of murder, that sanity and murder may be defined as the Legislature chooses, and that mere "conscious objective” — without regard to the capacity to appreciate that one’s conduct is wrong — is all the mental culpability necessary to constitute the crime of murder (see, majority opn, at 200). The majority, therefore, upholds the new section 40.15 of the Penal Law which transforms insanity into an "affirmative defense” (see, Penal Law § 25.00 [2]) and, thereby, relieves the prosecution of the burden of proving a defendant’s mental competency. Under the statute, the prosecution bears no burden of persuasion on the issue whatsoever, even after the defendant has first satisfied the burden of production by raising the issue with clear and substantial evidence of mental disease or defect. In my view, such a rule contravenes fundamental principles of our system of criminal justice and, therefore, violates due process of law under the State Constitution.[1]
Moreover, the statute in question, which the majority acknowledges may be unconstitutional in some applications, is not saved simply because the prosecution must prove the defendant’s statutorily defined "intent” — i.e., that he was conscious of what he was doing (see, Penal Law § 15.05 [1]). Mental competency, which for centuries in Anglo-American law has been essential to criminal culpability, certainly means more than that. I respectfully dissent.
I
Before the framing of our State and Federal Constitutions, it was settled Anglo-American law that if " 'a lunatic in the time of his lunacy * * * do kill a man, this is no felonious act’ ” (Moore, M’Naghten is Dead — or is it?, 3 Houston L Rev 58, 62 [quoting William Lambard of Lincolns’ Inn in 1582]; see, *202 United States v Freeman, 357 F2d 606, 615-616 [2d Cir]). Beginning as early as the 13th century, there developed in English law the notion that the state should punish only those who were morally blameworthy. The criminal law was considered inapplicable to the insane on the ground that they were incapable of forming a criminal intent — or "guilty mind”— and, therefore, incapable of culpable behavior. Under this mens rea doctrine, insanity exculpated the defendant because of the absence of the state of mind deemed an inherent element of any criminal responsibility (see, Slovenko, The Insanity Defense in the Wake of the Hinckley Trial, 14 Rutgers LJ, 373, 382; Fritz, The Proposed Federal Insanity Defense: Should the Quality of Mercy Suffer for the Sake of Safety?, 22 Am Crim L Rev 49, 50-52).
The most influential commentators of the common law stated the ancient rule succinctly when they defined criminality. "An unwarrantable act without a vicious will”, wrote Blackstone, "is no crime at all. So that to constitute a crime against human laws, there must be, first, a vicious will; and, secondly, an unlawful act consequent upon such vicious will” (4 Blackstone, Commentaries, at 21). His definition mirrored that of Coke who stated that murder could be committed only by "a person of sound memory and discrimination”. This was a principle so basic that it formed the introduction to Coke’s seminal treatment of felonies (see, 3 Coke, Institutes of Laws of England 47, 56 [Coke used the Latin phrase "actus non facit reum nisi mens sit rea”, meaning an act does not make one guilty unless his mind is guilty]; see also, Stokes v People, 53 NY 164, 179).
This compound concept of criminality took deep root in early American law. Our substantive law of crimes was based on a theory of punishing only "free agent[s] confronted with a choice between doing right and doing wrong and choosing freely to do wrong” (Pound, Introduction to Sayre, Cases on Criminal Law [1927]; see, Morissette v United States, 342 US 246, 250-252). Leading state courts in this country early affirmed the common-law rule, stating in various terms that "[s]anity is an ingredient in crime as essential as the overt act, and if sanity is wanting there can be no crime” (Chase v People, 40 Ill 352, 358; see also, e.g., Commonwealth v Rogers, 7 Metc [Mass] 500, 504; People v Garbutt, 17 Mich 9, 22).
The same principle was recognized in this State. Our earliest statute on the subject declared that "[n]o act done by a *203 person in a state of insanity can be punished as an offence” (Rev Stat of 1828, part IV, ch 1, tit 7, § 2). Applying the principle thus codified, the courts of this State regarded it as the "settled law” of New York on the question of "responsibility for criminal acts [emphasis added]”, the "correctness of [which] cannot be questioned” (Flanagan v People, 52 NY 467, 469; Willis v People, 32 NY 715, 719; see also, Walker v People, 88 NY 81, 88; Brotherton v People, 75 NY 159, 162, supra; Freeman v People, 4 Denio 9, and cases cited therein). As we explained in Willis: if a "person was under a delusion, and did not know right from wrong, or that the act was an offense or was wrong, he was insane, and was not responsible for the act” — his conduct was simply not criminal (32 NY, supra, at 719; see also, Brotherton v People, supra, at 162; McKee v People, 36 NY 112, 115; People v McCann, 16 NY 58, 66).
When the criminal laws of this State were revised in the Penal Code of 1881, this rule was explicitly incorporated. While codifying the test for legal insanity from M’Naghten’s Case (10 Clark & Fin 200, 8 Eng Rep 718), the statute provided in unqualified terms that "[a]n act done by a person who is an idiot, imbecile, lunatic or insane, is not a crime [emphasis added]” (Penal Code of 1881 § 20). This provision was retained in the Penal Law of 1909 verbatim (§ 1120) and, when the Penal Law was revised in 1965, the principle was preserved in the corresponding provision which declared that an insane person, within the meaning of the statute, was "not criminally responsible for [his] conduct” (§ 30.05; L 1965, ch 1030). The current statute (Penal Law § 40.15; L 1984, ch 668) employs similar terminology — i.e., "lack of criminal responsibility”. Throughout this period, our court has never wavered in its adherence to the underlying principle thus reflected in our statutes and firmly established in our earliest case law, that mental competency is an essential ingredient of a criminal offense (see, e.g., People v Silver, 33 NY2d 475, 478-479; People v Schmidt, 216 NY 324, 339-340; O’Connell v People, 87 NY 377, 380; Walker v People, 88 NY 81, 88, supra).
The substantive criminal law of New York, as in most American jurisdictions (see, 21 Am Jur 2d, Criminal Law, §§ 46, 48), has historically treated insanity as something quite different from other, ordinary defenses. Rather than an excuse or justification for an otherwise felonious act, the insanity defense is considered to render the actor himself inculpable or unresponsible because of his inability to make a knowing, rational choice (see, Arenella, Reflections on the Current Pro *204 posals to Abolish or Reform the Insanity Defense, 8 Am JL & Med 271, 273; 1 LaFave & Scott, Substantive Criminal Law § 4.1 [a], [b]). For centuries now in Anglo-American jurisprudence, insanity has been recognized as the absence of one of the two fundamental elements of criminal responsibility: the mental state which renders the act culpable (see, Slovenko, The Insanity Defense, op. cit., at 375).
II
Consistent with this basic principle that there can be no crime without a sane mind, the burden of proof on the issue of mental competency must be borne by the state. The "guilty mind”, no less than the act committed, is essential to criminality. Unless it is established by the People whenever sufficiently put into issue by the defendant, it cannot be said that every element of the crime charged has been proven beyond a reasonable doubt. This is not merely abstract theory. It is a realistic conclusion supported by considerations of fairness as well as logic; it has been recognized traditionally by most of the high State and Federal courts, including our own court which, until today, has never wavered since it first decided the issue.
In People v McCann (supra), this court unanimously rejected a trial court’s charge to the jury which placed upon the defendant the burden of proving his insanity beyond a reasonable doubt. While the court apparently did not decide whether the burden had to be borne by the prosecution, Justice Brown, in a concurring opinion, wholly unexcepted to by the other members of the court, reviewed "the just and humane principles of the common law” and concluded that "[sjound memory and discretion * * * are essential elements of the crime, to be established upon the trial as a part of the case of the prosecution” (id., at 64, 67). Justice Brown set forth his position with reasons which were ultimately adopted by the entire court and had significant influence on other jurisdictions as well. "If there be a doubt about the act of killing”, he wrote, "all will concede that the prisoner is entitled to the benefit of it; and if there be any doubt about the will, the faculty of the prisoner to discern between right and wrong, why should he be deprived of the benefit of it, when both the act and the will are necessary to make out the crime? * * * [S]uch doubts and uncertainties shall be removed before there can be a conviction” (16 NY, supra, at 67).
*205 In Brotherton v People (75 NY 159, 162-163, supra), the court was directly confronted with the issue and resolved it unanimously as Justice Brown had argued. The rule was reaffirmed shortly thereafter in O’Connell v People (87 NY 377, 380, supra) and Walker v People (88 NY 81, 88, supra). This court has never since questioned the validity of that rule or its underlying propositions: "the guilt of the prisoner depend[s] upon two questions, viz., whether he committed the act charged, and whether he was in such condition of mind as to be responsible; * * * the burden of proof as to both, [is] upon the prosecution” (88 NY, supra, at 88).
In 1895, when the United States Supreme Court first addressed the issue, it adopted the New York position as a matter of Federal law (Davis v United States, 160 US 469). Expressly relying on the opinions in early New York cases, the Supreme Court asked: "How then upon principle or consistently with humanity can a verdict of guilty be properly returned, if the jury entertain a reasonable doubt as to the existence of a fact which is essential to guilt, namely, the capacity in law of the accused to commit that crime?” (Emphasis added.) (160 US, supra, at 488.) The court, speaking through Justice Harlan, Sr., answered without equivocation: it "cannot be” (id.).
The court concluded by addressing the concern that the insanity defense might sometimes be sustained only because difficult to disprove. "But the possibility of such results”, the court said, "must always attend any system devised to ascertain and punish crime, and ought not to induce the courts to depart from the principles fundamental in criminal law, and the recognition and enforcement of which are demanded by every consideration of humanity and justice [emphasis added]” (160 US, supra, at 493).
It is difficult, at best, to reconcile this language with the Supreme Court’s recent retrenchment from the Davis rule (see, e.g., Martin v Ohio, 480 US 228, 235-236; Rivera v Delaware, 429 US 877). The court’s grounding of its Davis holding squarely on "principles fundamental”, "humanity”, and "justice” seems, in all candor, wholly at odds with that court’s current interpretation of this earlier precedent as having stated a mere rule of practice devoid of constitutional implications (see, Rivera v Delaware, supra, at 879 [Brennan, J., dissenting]; Patterson v New York, 432 US 197, 203). In my view, our court ought not to follow suit.
*206 For reasons of both principle and precedent, we have, until today, steadfastly adhered to our long-settled and well-considered view (see, People v Silver, 33 NY2d 475, 479, 483, supra; People v Kelly, 302 NY 512, 517; People v Egnor, 175 NY 419, 428). We have done so, moreover, regardless of the statutory language in which the insanity defense was couched. When our statute was silent on the issue (Rev Stat of 1828, part IV, ch 1, tit 7, § 2), we relied on the elementary propositions underlying the common-law mens rea doctrine to hold that the burden must be placed on the prosecution (see, Brotherton v People, supra, at 162-163). When the statute was changed to provide that "[a] person is not excused from criminal liability” as an insane person "except upon proof’ that he was insane (Penal Code of 1881 § 21; Penal Code of 1909 § 1120), this court construed the provision consistent with the reasoning in our earlier decisions. We explained that the legal presumption of sanity required a defendant to interpose the issue in the first instance by presenting "clear and substantial evidence of insanity”, but that, thereafter, the burden of proof remained with the prosecution (Walker v People, supra, at 90; O’Connell v People, supra, at 380; People v Schmidt, supra, at 342; People v Taylor, 138 NY 398, 406-407). Our construction of these earlier statutes was expressly codified when the Penal Code was revised in 1965 (§ 30.05; L 1965, ch 1030).
Not until the enactment, in 1984, of the statute here in question, did the written or decisional law of this State provide otherwise.[2] The statute flatly contravenes the well- *207 established jurisprudence of New York and, I believe, basic tenets of constitutionally protected due process. We should reject it.
III
This court’s decision in People v Patterson (39 NY2d 288, affd 432 US 197) does not support a different conclusion. In that case, we upheld the statutory provision making “extreme emotional disturbance” an affirmative defense to be proven by the defendant by a preponderance of the evidence (Penal Law § 125.25 [1] [a]; § 25.00 [2]). Writing for the majority, Judge Jasen explained that the prosecution must still “prove, beyond a reasonable doubt, the facts bearing [on] the defendant’s intent”; but “extreme emotional disturbance does not negate intent” (39 NY2d, supra, at 302). The purpose of that affirmative defense, he continued, "is to permit the defendant to show that his actions were caused by a mental infirmity not rising to the level of insanity, and that he is less culpable for having committed them” (emphasis added) (id.). That is a far cry from insanity, which does negate intent and thus renders the defendant entirely nonculpable for his actions.
In affirming our decision in Patterson, the Supreme Court articulated a due process test which we had not applied and which we have never embraced. That court said that due process merely requires the prosecution to prove "the elements included in the definition” (emphasis added) of the crime charged (432 US, supra, at 210). As the dissenting Justices noted, this test would permit a shifting of the burden of proof with respect to virtually any factor in a criminal case, so long as “any references to the factor be confined to those [statutory] sections that provide for an affirmative defense” (432 US, supra, at 223 [Powell, J., dissenting]). That is just what the Supreme Court has permitted in subsequent decisions (see, e.g., Martin v Ohio, 480 US 228, 236-242, supra [Powell, J., dissenting] [justification; contrast with, People v McManus, 67 NY2d 541]; McMillan v Pennsylvania, 477 US 79, 96 [Stevens, J., dissenting] [visible possession of a firearm]; Rivera v Delaware, 429 US 877, 880 [Brennan, J., dissenting] [insanity], supra).
*208 By sharp contrast to the Supreme Court’s majority holding, the opinion of our court in Patterson had reaffirmed the rule that the burden is on the prosecution to establish the defendant’s criminal "design to effect death” in a murder case, even though the statutory definition of that crime only requires that the killing be intentional — i.e., that it be committed with a mere "conscious objective” (People v Patterson, supra, at 299, 302; Penal Law § 125.25 [1]; § 15.05 [1]). Critical to our decision in Patterson was the principle that there could be no shifting to the defendant of the burden of proof on any essential element of the crime or of criminal responsibility itself (39 NY2d, supra, at 301-302). We have not since, until today, permitted it.
Moreover, the majority of this court goes beyond what the Supreme Court has ever approved. That court has always insisted that the burden remain on the prosecution to prove any essential element of the crime charged, and that a shifting of the burden to the defendant with regard to any such element would violate due process (see, e.g., Martin v Ohio, 480 US, at 231-234, supra; Patterson v New York, 432 US, supra, at 210; Mullaney v Wilbur, 421 US 684, 698-699; Leland v Oregon, 343 US 790, 795). Even when the Supreme Court has upheld affirmative defenses relating to the defendant’s mental state, it has been sure to point out that the state, in each of those cases, did not relieve the prosecution of proving, beyond a reasonable doubt, certain elements necessary to mental responsibility. Hence, in Patterson (432 US, at 206, quoting 39 NY2d, at 302, supra), the court quoted approvingly from the opinion of our court that the burden had not been shifted to the defendant to prove " 'a mental infirmity * * * arising to the level of insanity’ ”. In Leland v Oregon (343 US, supra, at 794), the court emphasized that the state statute required the prosecution to prove "premeditation, deliberation, malice and intent”. Recently, in Martin v Ohio (480 US, at 231-234, supra), it noted that, though the state had made self-defense an affirmative defense, the prosecution still had the burden of proving "specific purpose and intent to cause * * * death [and] prior calculation and design” (cf., Mullaney v Wilbur, 421 US 684, 686, supra [even though the statute required the prosecution to prove that homicide was "both intentional and unlawful”, due process was violated because "malice aforethought” was presumed and the burden of disproving it was on the defendant]).
*209 The statute upheld today relieves the prosecution of the burden of proving any mental state other than "conscious objective”. Neither malice, deliberation, specific purpose, nor any other culpable mentality need be demonstrated to obtain a murder conviction. Instead, the statute places the burden of disproving any such culpability on the defendant. On the one hand, Penal Law § 40.15 explicitly recognizes that there can be no "criminal responsibility” without substantial capacity to appreciate the nature of one’s conduct and that such conduct was wrong. On the other hand, it places the burden of proof on that critical issue entirely on the defendant. The prosecution thus bears no burden of proof on an element essential to criminality itself, let alone to the specific crime of murder. This, in my view, is abhorrent to principles grounded in the traditions and conscience of this State and its law (cf., Martin v Ohio, 480 US, at 241-244 [Powell, J., dissenting], supra).
IV
Let there be no mistake. The present statute, by making insanity an affirmative defense and, thereby, shifting the burden of proof on that issue to the defendant (Penal Law § 25.00 [2]), cannot be cured merely by holding that the People must still prove a defendant’s awareness of his actions. That is hardly the mental competency essential to criminal responsibility. Indeed, it adds nothing to the current statutory definition of "intentionally” — i.e., with a "conscious objective” (Penal Law § 15.05 [1]) — which is clearly not the equivalent of the mental condition necessary for criminal culpability.
At the very least, mental responsibility in criminal law, however phrased in our cases and statutes (including the present one), has always required the capacity to appreciate that one’s conduct is wrong (see, People v Taylor, 138 NY 398, 407, supra; Flanagan v People, 52 NY 467, 469, supra; compare, Penal Law § 40.15, with Penal Code of 1881 § 21). This very point was underscored by our unanimous court in People v Schmidt (216 NY 324, 339, supra). Speaking through then Judge Cardozo, we disapproved the trial judge’s instruction that, regardless of the defendant’s delusions, he could still be found mentally competent if he knew what he was doing and knew that his conduct was prohibited by law (id., at 330). As Cardozo explained in an illustration particularly apropros to the present case: "A mother kills her infant child to whom she *210 has been devotedly attached. She knows the nature and quality of the act; she knows that the law condemns it; but she is inspired by an insane delusion that God has appeared to her and ordained the sacrifice. It seems a mockery to say that, within the meaning of the statute, she knows that the act is wrong” (id., at 339; see also, People v Nino, 149 NY 317, 323-324; Willis v People, 32 NY 715, 718, supra). To hold that such a person was "responsible for the crime”, our court concluded, would be "abhorrent” (id., at 339).
Here, the evidence of insane delusions, as we explained in Schmidt and elsewhere, was probative of defendant’s lack of capacity to understand the wrongful nature of his conduct and, therefore, his lack of culpability under our criminal law. The resolution of this issue, not simply whether defendant was conscious of what he was doing, is essential to a finding of criminal responsibility under inviolable principles of due process in New York. The burden of proof on this issue, consistent with these principles, ought to remain with the prosecution.
Finally, when interpreting State law, this court , need not excuse its differences with the Supreme Court’s interpretation of corresponding Federal law. The guarantees of the Federal Constitution, as construed by the Supreme Court, represent only the minimum level of individual rights which no state may disregard. The protections provided by the New York Constitution may well be broader, and this court need not depend on textual distinctions or peculiarities of history or original legislative intention to decide that this is so (see, Cooper v Morin, 49 NY2d 69, 79; Linde, E Pluribus — Constitutional Theory and State Courts, 18 Ga L Rev 165, 176, 181). We must honor our independent duty to render a sound analysis of our own law, giving due consideration, of course, to all the relevant factors such as history, policy, logic and text (see, e.g., People v P. J. Video, 68 NY2d 296, 302-303).
When the Supreme Court has addressed an issue under Federal law, we may, of course, find that its decision provides the level of protection guaranteed by our State Constitution. On the other hand, we may disagree with the reasoning of the Supreme Court majority or conclude that the minimal guarantees of the Federal Constitution, as interpreted by them, simply do not satisfy the requirements of our State law. Finally, there may be occasions when the analysis and the position set forth by the dissenters at the Supreme Court fully *211 comport with the basic principles inherent in our State Constitution.
This is the situation here. The current majority of the Supreme Court has embraced a rule (explicitly adopted — and, in my view, extended — today by the majority of this court) which is a complete reversal of the court’s earlier position in Davis v United States (160 US 469, supra). That decision was fully in accord with, and indeed, heavily influenced by the decisions of this court (see, Davis v United States, supra, at 488-489, citing People v McCann, 16 NY 58, supra; Brotherton v People, 75 NY 159, supra; O’Connell v People, 87 NY 377, supra; and Walker v People, 88 NY 81, supra). The established New York rule, enunciated in those early decisions but now abandoned by the majority of this court, embodies the historic common-law principle inherent in the criminal due process guaranteed in our State Constitution: the People must prove each and every element of the crime beyond a reasonable doubt, including, when defendant’s mental capacity has fairly been placed in issue, his ability, not merely to know what he was doing, but to appreciate that what he was doing was wrong.
Nowhere is the rule more clearly expressed then by Justice Harlan, Sr., in Davis v United States (160 US, supra, at 488): "As the crime of murder involves sufficient capacity to distinguish between right and wrong, the legal interpretation of every verdict of guilty as charged is that the jury believed from all the evidence beyond a reasonable doubt that the accused was guilty, and was therefore responsible, criminally, for his acts. How then upon principle or consistently with humanity can a verdict of guilty be properly returned, if the jury entertain a reasonable doubt as to the existence of a fact which is essential to guilt, namely, the capacity in law of the accused to commit that crime?”
Accordingly, I would reverse the order of the Appellate Division, invalidate the statutory provision making insanity an affirmative defense, and remit for a new trial.
Chief Judge Wachtler and Judges Simons, Alexander and Titone concur with Judge Bellacosa; Judge Hancock, Jr., dissents and votes to reverse in a separate opinion in which Judge Kaye concurs.
Order affirmed.

. Although the Supreme Court has not addressed the issue in a case directly presenting it, the court has nevertheless dismissed an appeal that raised the identical issue for want of substantial Federal question (Rivera v Delaware, 429 US 877), and has subsequently been explicit, albeit in dicta, that the Federal Constitution does not require that the burden of proof be on the prosecution (Martin v Ohio, 480 US 228, 236; but see, id., at 236-242 [Powell, J., dissenting]; Rivera v Delaware, supra, at 877 [Brennan, J., dissenting]). Hence, our court must consider the issue to be resolved as a matter of Federal law. For reasons which follow, however, I strongly believe that the issue should be decided differently under our State Constitution. Moreover, I believe that the majority of this court goes even further than the Supreme Court has ever permitted under the Federal Constitution (see, infra).

. The legislative history reveals that the new statute was expected to operate within a procedural scheme consistent with the basic principles enunciated in our prior cases.
The existing statute was characterized as "plac[ing] no burden on the one party most able to produce evidence of the defendant’s state of mind — the defendant himself.” The new statute was believed to change the adjudication of the insanity issue, as follows: "a defendant who contends that he was not responsible for his actions has the initial burden of proving his contention by a preponderance of the evidence. If the defendant meets that burden, the People must disprove the defense beyond a reasonable doubt. As a result, genuine claims of lack of criminal responsibility will be fully and fairly litigated, and specious claims will be discouraged.” (Emphasis added.) (Executive Mem of approval, L 1984, ch 668, 1984 McKinney’s Session Laws of NY, at 3626.)
If the insanity defense were actually to operate in such a manner, the statute would not suffer what I perceive to be its fundamental due process infirmity. The burden of production on the issue would be on the defendant and, if that burden of proof were first met, the burden of persuasion would have to be satisfied by the prosecution. But Penal Law § 40.15 specifically *207 makes insanity an "affirmative defense”. Thus, the entire burden of proof, both production and persuasion, is placed on the defendant; it never shifts to the prosecution (compare, Penal Law § 25.00 [1] [defense], with §25.00 [2] [affirmative defense]).